Thomas SEAL, Plaintiff in Error,

v.

V. H. CARROLL, as Trustee in Bankruptcy
of Leon Berry Dennis, Defend-
ant in Error.

No. 41802.

Supreme Court of Oklahoma.

Feb. 27, 1968.

Carl Morgan and Thomas R. Williams, Guthrie, for plaintiff in error.

Reynolds & Ridings, by John R. McCandless, Oklahoma City, for defendant in error.

### DAVISON, Justice.

This is an appeal by Thomas Seal (defendant below) from a judgment rendered against him for $7500 with interest and attorney's fees in favor of V. H. Carroll, Trustee in Bankruptcy of Leon Berry Dennis (plaintiff below) upon a promissory note executed by Seal. A jury was waived and judgment was rendered after trial to the court.

A short statement of the pleadings reflects, at least in part, the controversy presented to the court. The trustee's petition (filed March 9, 1964) alleged the bankruptcy of Dennis as a result of a voluntary petition in bankruptcy, filed September 11, 1961; that Seal on or about July 13, 1961, executed and delivered to Helen Dennis (wife of the bankrupt) a note for $9500 due in "1963", which she assigned to L. B. Dennis, the bankrupt, without recourse, and that Trustee was the holder thereof; that Seal refused to pay the same, and prayed for judgment for $9500 with interest and attorney's fees.

The note was attached as an exhibit to the petition. The face of the note reflects an ordinary printed form of note with the blanks filled in with a typewriter for $9500, payable to Helen Dennis and "Due 1963" and signed by "Thomas Seal," and bearing the following typed notation: "Contents which note covers on reverse side." On the reverse side of the note, there appears the above mentioned assignment and the following:

"1– Culligan Water Softner
3– F–1 Lodi Molds
5– Lodi Matrix with town &
Country Design

3–#260 Air Compressors with wrenches and attachments
3–Custom truck bodies for hauling tires
1–1957 #350 truck Ford Make
For this equipment Thomas Seal will pay the First State Bank of Guthrie, Okla. $2000 plus interest of 6%, and L B Dennis $ 1.00 for other other Considerations.

"When mortgages are paid to Roy C Howland and The First National Bank of Guthrie Which Thomas Seal has obligated him self for he will have option of buying the above equipment—or paying full amount of note."

Seal filed an unverified answer and cross-petition consisting of a general denial and alleging that by oral agreement in April 1960 (1961), he acquired from Dennis the equipment set forth on the reverse side of the note for a consideration of $1.00 and his (Seal's) promise to pay Dennis' debt of $2000 to the First State Bank of Guthrie, Oklahoma, which was secured by a mortgage on the equipment; that later, at Dennis' request, he signed a note in blank with

the understanding that Dennis would complete the note for $2000 payable to Dennis and recite therein the above agreement for purchase of the equipment, but, contrary to their understanding, Dennis completed the note as shown by the copy attached to the Trustee's petition; that he paid the debt and mortgage held by the First State Bank and this constituted satisfaction of the note sued on; and that the mortgages to Howland and the First National Bank of Guthrie, referred to on the note attached to the petition, were unpaid and the Trustee's action thereon was prematurely brought. Seal's cross-petition prayed that the note be reformed and canceled.

The evidence of the parties was in some respects in irreconcilable conflict. The trial court reached the conclusion that Seal signed the note after it had been completed, that the $9500 figure reflected thereon was agreed upon by Dennis and Seal, and that the note should be credited with the $2000 paid by Seal to the First State Bank.

The record reflects that for a number of years prior to 1961 Dennis had operated an automobile tire business in Guthrie, Oklahoma, with branches or stores in Woodward and Oklahoma City, under the name of Guthrie Tire Plant, and had a large amount of equipment to recap and retread tires. Roy C. Howland at some prior time had been a partner in the business. Seal had been an employee of Dennis for some years and had that position at the time of their business transactions. Dennis started having financial difficulties about 1958 and his creditors started pushing him for payment. He also owed Howland and the First National Bank and they had mortgages on all or practically all of his equipment, except the equipment listed on the reverse side of the note. In April, 1961, he owed the First State Bank about $2000 which was partly secured by a mortgage on the Ford truck described in list of equipment on the reverse side of the note.

In an apparent attempt to delay or forestall creditors, Dennis, in April 1961, gave Seal (1) an assignment of $5000 accounts receivable to use in paying outstanding debts, (2) a lease on "all equipment" in consideration of Seal promising to make the installment payments on the Howland and First National Bank indebtedness, and (3) a bill of sale to the equipment listed on the back of the note in consideration of Seal paying $2000 debt to the First State Bank and Dennis $1.00. These instruments are in memorandum form and were typed under the letterhead of Guthrie Tire Plant.

Apparently these transactions did not have the desired result or were unsatisfactory to Dennis and Seal. On July 12, 1961, Dennis gave Seal a formal Bill of Sale transferring him a long list of itemized and described equipment subject to the Howland and First National Bank mortgages. Therein Seal assumed and agreed to pay the balance due thereon.

Dennis testified, and the evidence appears to support it, that the equipment listed on the back of the note was personally owned by him and was free of mortgages except as to the mortgage held by First State Bank. Dennis stated the amount of $9500 was based on his and Seal's agreed value of such equipment and his testimony as to value tends to support this figure. Seal's testimony fixed the value at near $2000. Both Dennis and his wife testified the note form was furnished by Seal and was completed by Dennis in their home in the presence of Seal and was signed there by Seal. Dennis' explanation of the circumstance of making the note to his wife was that, although she had no ownership interest in the business, he wanted her to have something from the sale. He stated that, when he told his attorney of this, he was advised to secure an assignment from Mrs. Dennis and to deliver the note into the bankruptcy, and this was done.

Seal contends the note was not a part of the bankrupt estate at the time the petition in bankruptcy was filed, and therefore no title to the same vested in the Trustee.

Seal cites authority to the effect that the bankruptcy trustee's title is ordinarily limited to property or rights which were trans-

ferrable by the bankrupt, or subject to seizure by his creditors, at the time of filing the petition in bankruptcy, and property independently acquired by the bankrupt thereafter does not pass to the trustee. The inference or claim, being made by Seal, is that the note belonged to Helen Dennis and she could possess it as her own, or could give it to Dennis and he could retain it.

Under 11 U.S.C. § 110(a) the trustee of the estate of a bankrupt is vested by operation of law with the title of the bankrupt as of the date of the filing of the petition. Under § 110(e) (1) a transfer by debtor adjudged bankrupt which is *fraudulent* against or *voidable* for any other reason by the creditor, shall be null and void as against the trustee.

■ Clearly the present trustee could move to recover property which was the subject of a fraudulent or voidable transfer. Helen Dennis furnished no consideration for the note. Dennis furnished the consideration and ordinarily the note would have been made payable to him. The point is that Dennis' attorney recognized the true situation and the questionable right of Helen Dennis to the note and the right of the Trustee to move to recover the note for the benefit of the estate of the bankrupt. The assignment to Dennis and his delivery of the note to the Trustee removed any need for any such action by the Trustee, inasmuch as title thereto was vested in the Trustee.

Seal also contends that the note was given for the purchase of the equipment listed on the back thereof, but that this same equipment had been previously sold to him for $2000 and he had fully paid for the same.

In support of this contention Seal relies upon the bill of sale Dennis gave him on April 1, 1961. He cites authority for the proposition that the bill of sale was complete, unambiguous, and its language was the only legitimate evidence of what the parties thereto intended.

Under the present circumstances the question presented is not strictly one of construing the terms of the instrument, but is as to the purpose for which it was given. Dennis stated they did not intend it to be a bill of sale, "except for creditors only." On the same date, April 1, 1961, Dennis leased to Seal "all equipment" and assigned to Seal the accounts receivable of the business. As stated above, it is apparent the transactions were made for the purpose of forestalling creditors.

■ However, it is not necessary to entirely rely on this conclusion. On July 12, 1961, Dennis and Seal executed the Bill of Sale transferring the equipment described therein to Seal and Seal assumed the payment of the mortgages. This instrument superseded the lease of April 1, 1961. Dennis testified that, although the note is dated July 13, 1961, it was in fact prepared and executed on July 12, 1961. The note is for the same equipment that is described in the bill of sale of April 1, 1961, with the additional provisions shown thereon. The note and its provisions become a substitute for the prior agreement.

■ In Rose v. Roberts, 195 Okl. 687, 161 P.2d 851, we stated that a subsequent contract covering fully the subject matter of a former contract operates as a rescission of and substitute for the former contract.

Seal's contention has no legal grounds to support it.

Seal further contends that the Trustee failed to prove the note was due and unpaid, that all covenants and conditions of the note had been performed, and that he (Seal) had elected to purchase the equipment under its terms.

Seal admits, for the purpose of this proposition, that the note was completed before he signed it.

Seal relies upon the following portion of the memorandum on the reverse side of the note:

"When mortgages are paid to
Roy C Howland and The First
National Bank of Guthrie

Which Thomas Seal has obligated
him self for he will have
option of buying the above
equipment—or paying
full amount of note."

Dennis stated, in response to questioning by the trial judge, that the word "or" therein was intended to mean "by."

All of the circumstances must be considered in determining the merit of Seal's contention.

The Howland and First National Bank mortgages were payable in monthly installments. The note in the present action stated it was "Due 1963." Dennis stated the period of time required to pay off these mortgages would not have extended beyond the year 1963. Seal was obligated to pay the amounts secured by these mortgages. Seal testified during the portion of the trial held on April 23, 1965, that sometime about the latter part of 1962 he made an arrangement with the First National Bank whereby the two notes secured by these mortgages were consolidated into one note and "it cut my payments down some to where it helped me;" that he did not remember the amount of the consolidated note, but his payments were $500 a month plus interest; that he owed the First National Bank $16,000 on the consolidated note, but that $5000 of this amount was money he personally borrowed "somewhere in 1961 and '62," which was added to the note; and that he was still making the $500 a month payment.

Seal did acquire the equipment used in the operation of the business and stated at the trial he owned the Guthrie Tire Plant. The inescapable conclusion is that the equipment is necessary to the business and has been so employed. He testified he had paid the First State Bank the $2000 debt due that concern and described on the back of the note. The records of the First State Bank reflect this to be the balance of two notes of the Guthrie Tire Plant, one of which was secured by a mortgage on the 1957 Ford Truck, and also reflecting payments after July 13, 1961, so that one note

was satisfied in October 1961, and the other note in November, 1961. By his own admission Seal sold the Ford truck. This, in itself, evidences some intent to complete the purchase.

Furthermore, in consolidating the Howland and First National Bank note indebtedness into one note with provision for lesser payments, and in adding thereto an additional indebtedness of at least $5000, Seal pursued a course of conduct that defeated satisfaction of this indebtedness in 1963 and within their ordinary terms. In the meantime the equipment could wear out or depreciate to a negligible value and be completely lost to the holder of the note. We deem this to be unfair and clearly not within the contemplation of the parties at the time of the execution of the note.

■ When contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound. Ireland v. Chatman, 87 Okl. 223, 209 P. 408, and Lewis v. Grininger, 198 Okl. 419, 179 P.2d 463.

■ In Mount v. Schulte, 193 Okl. 335, 143 P.2d 424, we held that a party to a contract may not prevent performance of a condition therein and then claim the benefit of such condition.

■ Under the circumstances in the present case we hold that Seal should not benefit from his conduct and defeat recovery on the note.

Seal finally contends the judgment was founded on the trial court's opinion of what the transaction between Seal and the bankrupt should have been, not on matters in issue.

■ A judgment, if correct, must stand, regardless of the correctness of the reasons, theory or conclusions upon which it is based. McDaniel v. McCauley, Okl., 371 P.2d 486.

The judgment of the trial court is not against the clear weight of the evidence and is affirmed.

All the Justices concur.