812 F.2d 1319
 DAYTON HUDSON CORPORATION, a Minnesota Corporation,
Plaintiff-Appellee, Fred Monsour, Trustee,
Plaintiff-in-Intervention-Appellee,
v.
MACERICH REAL ESTATE COMPANY, a New York General
Partnership, Defendant-Appellant.
 No. 85-1737.
 United States Court of Appeals,
Tenth Circuit.
 March 4, 1987.
 
 Stephen P. Friot of Spradling, Alpern, Friot & Gum, Oklahoma City, Okl., for plaintiff-appellee.
 Robert C. Smith, Jr. of Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, Okl., for plaintiff-in-intervention-appellee.
 Monty L. Bratcher of Bratcher & Teague (Terry F. Stokes, with him on the briefs), Oklahoma City, Okl., for defendant-appellant.
 Before SETH, BARRETT and TACHA, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Macerich Real Estate Company (Macerich) appeals from an order and judgment entered in favor of Dayton Hudson Corporation (DHC), appellee, and Fred Monsour (Monsour), intervenor appellee. The relevant undisputed facts may be briefly summarized.
 
 
 2
 On April 11, 1967, Monsour granted a ground lease to Macerich covering an 11.6 acre tract of land owned by Monsour. Macerich acquired the ground lease with the intent of constructing a building on the acreage and thereafter subleasing the building. Section 3 of the ground lease agreement provided, inter alia:(a) Tenant covenants and agrees to pay Landlord for the Demised Premises without offset or deduction and without previous demand therefor, basic rent at the rate equal to the sum of:
 
 
 3
 * * *
 
 
 4
 * * *
 
 
 5
 All basic rent per annum shall be payable by Tenant in advance in equal monthly installments....
 
 
 6
 (b) Tenant shall, during the term of this lease, as additional rent, pay to the Landlord twenty (20%) per cent of all amounts received by Tenant as percentage rental ... from any sublease with respect to the Demised Premises pursuant to the provisions, if any, of any sublease with respect to the Demised Premises relating to the payment of such percentage rental (emphasis added).
 
 
 7
 The term of the ground lease was for twenty-six years and seven months. The lease year for the ground lease began on February 1 and ended on January 31 annually.
 
 
 8
 Macerich constructed a building on Monsour's property in 1970 and subleased the building to Arlan's Department Stores, Inc. (Arlan's). Arlan's vacated the building in 1971. Thereafter, in 1972, Target Stores, Inc. (Target) subleased the building from Macerich. The term of the sub-lease was for twenty-seven years and four months. DHC, appellee herein, is Target's corporate successor by merger. Article 10 of the Macerich/Target sublease obligated Target to pay Macerich a fixed minimum annual rental and a percentage rental, subject to certain offsets, of 1.5% of Target annual gross sales in excess of $9,040,000.
 
 
 9
 From 1972 to 1979, Macerich paid Monsour the base rental set forth in the ground lease and 20% of the percentage rentals paid by DEC to Macerich. On January 31, 1979, approximately seven years into the twenty-seven year term of the sublease, Macerich and DHC executed an amendment to their sublease. As amended, the sublease deleted DHC's obligation to pay percentage rentals. In lieu thereof, DHC agreed to pay a higher minimum monthly rental and utility, maintenance, and repair costs which had been previously paid by Macerich. Subsequent to the sublease amendment, Macerich failed to pay the percentage rentals due Monsour under the ground lease.
 
 
 10
 In 1984, DHC, in an effort to protect its position under the sublease, paid Monsour $171,016.88 representing the percentage rental sum due Monsour from Macerich under the terms of the ground lease. DHC then initiated this suit in the nature of a declaratory action seeking the right to pay percentage rentals directly to Monsour. Macerich defended on the basis that because the amendment to the sublease terminated DHC's obligation to pay percentage rentals, and because it (Macerich) no longer received percentage rentals, it did not owe Monsour any percentage rentals.
 
 
 11
 Within its order of April 25, 1985 granting DHC summary judgment, the district court found that the termination of percentage rental payments to Monsour was "untenable because Macerich really is receiving equivalent payments from Dayton Hudson in the form of higher fixed minimum rent and a reduction in its share of maintenance costs, fuel costs, etc. The amount paid to Monsour by plaintiff [DHC] is not in dispute herein and plaintiff had the legal right to pay the disputed sums directly to Monsour so as to avoid a lease cancellation by him." (R., Vol. II at p. 423).
 
 
 12
 In its judgment of May 30, 1985, the district court ordered Macerich to pay Monsour additional annual percentage rental in accordance with Section 3 of the ground lease. The court also directed that in the event that Macerich failed to pay Monsour as ordered, that DHC could pay Monsour directly and thereafter offset such payments against any amounts which might otherwise be due Macerich.
 
 
 13
 The district court concluded as a matter of law:
 
 
 14
 [t]hat the defendant, MaceRich Real Estate Company, is precluded from relying upon its non-receipt of percentage rent from Dayton Hudson Corporation as a condition precedent to its obligation to pay percentage rent to the intervenor, Fred Monsour, Trustee, because it was the conduct of the defendant, MaceRich Real Estate Company, not ratified or consented to by the intervenor, Fred Monsour, Trustee, which prevented fulfillment of said alleged condition precedent.
 
 
 15
 The Court further concludes as a matter of law that a party to a contract may not by his deliberate act prevent the happening of a condition therein and then take advantage of the condition to defeat liability upon the contract.
 
 
 16
 The Court further concludes as a matter of law that there was implied in the groundlease agreement between the intervenor, Fred Monsour, Trustee, and the defendant, MaceRich Real Estate Company, the covenant that neither party to the contract would injure the right of the other party to receive the benefits of the agreement.
 
 
 17
 R., Vol. II at p. 429.
 
 
 18
 In accordance with this judgment, DHC commenced offsetting rentals otherwise due Macerich against the $171,016.88 it had paid Monsour. Thereafter, Macerich sent DHC default notices threatening to dispossess Target as a tenant.
 
 
 19
 On July 11, 1985, DHC filed a motion for supplemental relief. DHC requested the court to order Macerich to cease and desist from sending the default notices until such time as DHC had recouped the $171,016.88 it had paid directly to Monsour and which the court had ruled could be offset against future rental otherwise due and owing Macerich. The court entered an order the same day which provided, inter alia:
 
 
 20
 ORDERED that the plaintiff, Dayton Hudson Corporation, have judgment against the defendant, MaceRich Real Estate Company, in the amount of $171,016.88, with interest at the rate of 6 percent per annum from October 23, 1984 to May 30, 1985, the whole to bear interest at the rate of 7.60 percent per annum from May 30, 1985 until paid.
 
 
 21
 IT IS FURTHER ORDERED that the defendant, MaceRich Real Estate Company, shall cease and desist from issuance of further default notices to plaintiff, Dayton Hudson Corporation, until such time as plaintiff has recovered the entire amount which has been adjudicated by this Court to be due plaintiff from defendant.
 
 
 22
 R., Amended Supplemental Vol. II at pp. 18-19.
 
 
 23
 Less than one month later, on August 2, 1985, Macerich sent Target another default notice. On August 19, 1985, DHC filed an application for citation for contempt against Macerich. On September 6, 1985, the court entered an order imposing sanctions on Macerich for contempt of court. Within its order, the court directed Macerich to post a $200,000 security bond. The court also ordered "that, in the event that any such order shall hereafter be violated, the entire amount of said bond shall be forfeited." R., Amended Supplemental Vol. II at p. 45. As of October 6, 1986, DHC had recouped, by way of rental offset, all of the $171,016.85 it had paid directly to Monsour.
 
 
 24
 On appeal, Macerich contends: (1) Macerich has no obligation to pay percentage rent to Monsour because Macerich is not receiving percentage rent from DHC; (2) the district court erroneously adopted inappropriate legal theories; (3) the lease must be construed according to its express terms; (4) DHC is estopped from asserting that Monsour's consent to the lease amendment was necessary; (5) DHC is not entitled to enforce the percentage rental provisions of the ground lease and is not entitled to recover percentage rental payments made to Monsour; (6) the court erred in granting summary judgment; and (7) neither the court nor DHC complied with the specific language of 28 U.S.C. Sec. 2202 prior to the court's issuance of supplemental relief. Our discussion of these issues will be limited to those issues we deem dispositive.
 
 I.
 
 25
 At the outset, we observe that in reviewing a grant of summary judgment, we must examine the record to determine whether any genuine issue of material fact pertinent to the ruling remains, and, if not, whether the substantive law was correctly applied. Franks v. Nimmo, 796 F.2d 1230, 1235 (10th Cir.1986). Where different, ultimate inferences may be drawn from the evidence presented by the parties, the case is not appropriate for summary judgment. Brown v. Parker-Hannifin Corporation, 746 F.2d 1407, 1408 (10th Cir.1984). A party moving for summary judgment need not disprove plaintiff's claim but rather, must only establish that the factual allegations have no legal significance. Windon Third Oil and Gas Drilling Partnership v. Federal Deposit Insurance Corporation, 805 F.2d 342, 345 (10th Cir.1986). In the absence of genuine issues of material fact, our review of the grant of summary judgment is limited to whether the substantive law was correctly applied. Franks v. Nimmo supra.
 
 
 26
 As set forth above, DHC initiated this action after it paid Monsour $171,016.88 representing the percentage rental it believed to be due Monsour from Macerich within the terms of the ground lease. DHC sought the right to protect its position under the sublease by paying percentage rentals directly to Monsour. In response, Macerich contended that Monsour was not entitled to any percentage rentals. Macerich defended its position on the basis that the amendment to the sublease terminated DHC's obligation to pay percentage rentals, that after the amendment it (Macerich) no longer received percentage rentals, and that, accordingly, Monsour was not entitled to receive any percentage rentals.
 
 
 27
 The district court rejected this argument and found that: DHC made equivalent rental payments to Macerich after the amendment in the form of higher minimum rents and the payments of expenses previously paid by Macerich; subsequent to the amendment, Target's gross sales exceeded the threshold amount for percentage rent under the sublease; Macerich was precluded from relying on its own receipt of percentage rent as a condition precedent to pay percentage rent when, as here, it was Macerich's conduct which prevented fulfillment of the condition precedent; a party to a contract may not, by his deliberate act, prevent the happening of a condition therein and then take advantage of the condition to defeat liability under the contract; and that under the ground lease, there was an implied covenant that neither party to the contract would injure the right of the other party to receive the benefits of the agreement.
 
 
 28
 The conclusions of the district court are well supported by Oklahoma law. Oklahoma has long recognized that the parties to a contract are subject to an implied covenant to proceed in good faith. See, Miller v. Independent School District No. 56 of Garfield County, 609 P.2d 756, 758 (Okla.1980) ("[a] contract includes not only the promises set forth in express words, but, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which it was made."); and Western Natural Gas Company v. Cities Service Gas Company, 507 P.2d 1236, 1241 (Okla.1972) (it is implied in every contract that neither party shall do anything which will destroy or injure the other party's right to receive the fruits of the contract). Also, in Mount v. Schulte, 193 Okl. 335, 143 P.2d 424, 426 (1943), the court held that "[a] party to a contract may not by his deliberate act prevent the happening of a condition therein and then take advantage of the condition to defeat liability upon the contract." This holding was reaffirmed in Seal v. Carroll, 439 P.2d 185, 189 (Okla.1968). Similarly, in Townsend v. Melody Home Manufacturing Company, 541 P.2d 1370, 1375 (Okla.App.1975), the court held "that a party to a contract may not prevent performance of a condition and then claim the benefit of such condition."
 
 
 29
 Applying the law of Oklahoma to the facts herein, we hold that the district court did not err in granting summary judgment in favor of DHC. Monsour and Macerich were nine years into a twenty-six year ground lease and Macerich and DHC were seven years into a twenty-seven year sublease when the sublease was amended to delete percentage rentals. Prior thereto, Monsour had received 20% of the percentage rentals received by Macerich under the sublease. After the amendment, Macerich continued to receive the equivalent of rentals but declined to pay any percentage rentals to Monsour even though Target's gross sales exceeded the threshold amount for percentage rent under the sublease.
 
 
 30
 Macerich's repeated attempts to avoid payment of percentage rentals to Monsour after the amendment to the sublease conflicts directly with the substantive law of Oklahoma. Townsend v. Melody Home Manufacturing Company, supra at 1375, "a party to a contract may not prevent the performance of a condition and then claim the benefit of such condition."
 
 II.
 
 31
 Macerich contends that the district court erroneously adopted inappropriate legal theories. Macerich cites Mercury Investment Company v. F.W. Woolworth Company, 706 P.2d 523, 530 (Okla.1985), for the proposition that when the rental reserved in a lease is based upon a percentage of the gross receipts of a business and a guaranteed substantial minimum rent, there is no implied covenant in the lease requiring a tenant to pay percentage rentals.
 
 
 32
 In Mercury Investment Company, Mercury sued Woolworth to terminate a shopping center lease. Mercury alleged that Woolworth had breached an implied covenant to diligently operate its (Woolworth's) business in such a manner as to generate percentage rentals and to attract other customers to the shopping center for the benefit of other tenants. The court declined to imply a covenant in light of the fact that such lease called for substantial adequate minimum rent.
 
 
 33
 Macerich argues that because Monsour received substantial minimum guaranteed rentals "there is no implied covenant in the lease requiring Macerich to generate percentage rentals and thus there is no duty to pay such to Monsour." (Appellant's Brief In Chief at p. 25). The court in Mercury Investment Company refused to imply a covenant that would have required a tenant to generate percentage rentals when the governing lease provided for a substantial minimum rental. The court did not discuss under what conditions, if any, a substantial minimum rental provision would override an express percentage rental provision. As such, Mercury Investment Company cannot be considered controlling herein.
 
 
 34
 Whereas Mercury sued Woolworth alleging breach of an implied covenant to diligently conduct its (Woolworth's) business in such a manner as to generate percentage rentals and to attract other customers, DHC sued Macerich under a sublease that expressly provided for the payment of percentage rentals when the gross sales of the tenant under the sublease reached an established figure. Furthermore, in the instant case, it is undisputed that at all relevant times, Target's gross sales exceeded the threshold figure for percentage rental computation. Mercury Investment Company is clearly inapposite.
 
 III.
 
 35
 Macerich contends that summary judgment was not proper when the $171,016.88 DHC paid to Monsour was in dispute. Macerich argues that although it has admitted that DHC actually paid $171,016.88 to Monsour, it has never admitted that the $171,016.88 so paid was the correct amount. Macerich contends that there remains a question of fact as to the correct amount to be paid to Monsour. Our review of the record on appeal discloses that Macerich did not raise this issue until after summary judgment had been entered in DHC's favor and Macerich had appealed to this court.
 
 
 36
 On April 25, 1985, the district court entered an order disposing of DHC's motion for summary judgment, adopted by Monsour, and Macerich's cross-motion for summary judgment. In its order, the court stated:
 
 
 37
 After MaceRich lost that case, it took the position that since it was no longer receiving the percentage payments from plaintiff, it was not obligated to pay such to the landowner Monsour because, argues MaceRich, it is only obligated to pay to Monsour a portion of that which it receives from Dayton Hudson Corporation and since it has received none, it owes none.
 
 
 38
 This arrangement is untenable because MaceRich really is receiving equivalent payments from Dayton Hudson in the form of higher fixed minimum rent and a reduction in its share of maintenance costs, fuel costs, etc. The amount paid to Monsour by plaintiff is not in dispute herein and plaintiff had the legal right to pay the disputed sums directly to Monsour so as to avoid a lease cancellation by him (emphasis added).
 
 
 39
 R., Vol. II at p. 423.
 
 
 40
 On May 30, 1985, the court held a hearing on the judgment to be entered in accordance with its order of April 25, 1985. It was during this hearing, which occurred after Macerich had appealed the order of April 25, 1985, that Macerich raised, for the first time, the issue of whether the $171,016.88 paid to Monsour was the correct amount.
 
 
 41
 At the hearing, after noting that the $171,016.88 "was not controverted some way or other," and that "I think I'm safe in accepting this figure," (R., Supp.Vol. I at p. 5), the court observed:
 
 
 42
 THE COURT: Let me add quickly there, we resolved all the issues in the first trial that were raised or could have been raised, and this is one of them that not only could have but should have been, if you're continuing this way, then to come in here three or four years later, after you've lost every penny, to say you're not going to be bound by the order of the Court doesn't meet with too much favor. Not you, but your clients are dead set on--
 
 
 43
 * * *
 
 
 44
 * * *
 
 
 45
 Well, I'm going to sign this judgment. I think, really, what happened, your people found out that the amendments weren't quite as favorable to them as they first thought and then we're not going to live up to these amendments and they set upon the course of not being bound by their agreements, and that's what all this litigation has been about. I'm signing it now, going to file it.
 
 
 46
 R., Supp. Vol. I at pp. 17-18.
 
 
 47
 We hold that the court did not err in granting summary judgment in favor of DHC. The record clearly establishes beyond cavil that at no time prior to the court's order of April 25, 1985, did Macerich challenge whether the $171,016.88 that DHC paid Monsour was the correct amount due and owing him. Macerich's initial challenge to this amount occurred over thirty days after summary judgment had been entered in favor of DHC and after Macerich had appealed to this court. Under these circumstances we hold that Macerich has waived its right to raise this allegation of error on appeal.
 
 
 48
 Once a party moving for summary judgment has met his initial burden, the party resisting the motion cannot rest on his pleadings. Security National Bank v. Belleville Livestock Commission, 619 F.2d 840, 848 (10th Cir.1979). See also, Liberles v. County of Cook, 709 F.2d 1122, 1126 (7th Cir.1983) ("[a] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such issues on appeal.") Macerich, by its own inaction, waived its right to challenge the correctness of the $171,016.88 DHC paid directly to Monsour.
 
 IV.
 
 49
 We have carefully considered Macerich's remaining allegations of error and hold them to be individually and collectively without merit.
 
 
 50
 AFFIRMED.