**John Randall UTLEY, Plaintiff,**

v.

**STATE FARM AUTOMOBILE INSURANCE COMPANY, Defendant.**

No. 88–1546–K.

United States District Court, D. Kansas.

July 5, 1989.

William B. Bolin, Hope, Mills, Bolin, Collins & Ramsey, Garden City, Kan., for plaintiff.

Jack E. Dalton, Mangan, Dalton, Trenkle, Rebein & Doll, Dodge City, Kan., for intervenor.

Donald E. Shultz, Shultz & Associates, Dodge City, Kan., for defendant.

Stephen M. Kerwick, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for garnishee.

### MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

The present case arises from a one-car automobile accident which occurred on Feb-

ruary 22, 1986. At the time of the accident, the driver of the car was Michael Collie. The accident caused damages to the car, and injuries to the passenger, John Utley. The car was owned by Jarrell Bridges and insured by State Farm Automobile Insurance Company.

State Farm brought a subrogation claim under Bridges' name against Collie in Ford County, Kansas for damages to the car. This action (Case No. 87–C–37) included a claim by Bridges for punitive damages for Collie's alleged reckless or wanton conduct. Bridges and State Farm were represented in this litigation by their attorney, William Bolin. (Pl.'s Memorandum, ¶ 7.) Utley subsequently intervened in the Bridges–Collie action, seeking recovery for his personal injuries.

One of the issues involved in the Ford County litigation was whether, on the night of the accident, Collie was operating the Bridges vehicle with consent. (Pl., ¶ 1.) Utley contended that Collie was operating the car with the consent of Bridges through Bridges' son, Derek. (Pl., at A–7.) Bolin filed an answer to Utley's petition, denying "every allegation" in the paragraph of the petition which asserted the existence of consent. (Pl., at A–9.)

Utley again asserted the existence of consent in his pretrial questionnaire. (Pl., at A–12.) Collie's attorney also noted the existence of the issue in the pretrial questionnaire filed on behalf of his client. One of the questions of fact to be resolved is listed: "Did defendant operate insureds [sic] vehicle with consent?" (Pl., at A–17.)

In the pretrial questionnaire filed on behalf of State Farm and Bridges, Bolin again denied the existence of consent. The questionnaire states:

> In response to the Petition of Intervenor, the Defendant Collie did not have permission to operate Plaintiff's vehicle and no one gave Defendant Collie either express or implied consent to drive said vehicle.

(Pl., at A–19.) This position is also reflected in the pretrial order. The order recognizes Bridges' contention that Collie was operating the car "without the permission of the owner or the owner's son." (Pl., at A–30.)

The pretrial conference was held on May 25, 1988. At the conference, the subject of consent was discussed by the parties. According to an affidavit by the attorney for Collie, Bolin recognized the potential impact of the consent issue on coverage.

At the outset, Mr. Bolin requested a bifurcated trial on the issue of whether Michael Collie had permission to use the vehicle at the time of the collision. Mr. Bolin and other counsel explained to the court that the case was a subrogation case in which State Farm was suing in the name of its insured to recover damages paid under its collision coverage. Mr. Bolin told the court that in the event the jury found that Jason Collie had permission to use the vehicle at the time of the collision that this would make a realignment [sic] of the parties necessary. He would then be put in the position of having to defend the claim of the intervenor.

(Pl., at A–23.)

The Ford County court understood that a resolution of the consent issue would also resolve potential coverage issues. In explaining the bifurcation of the trial to the jury, the court stated that the jury's decision on consent in the first phase of the trial "will determine the alignment of the parties for the second stage of this trial." The court was also under the impression that this was the position of Bolin as well.

After the trial, Bolin argued that the jury's finding of consent did not establish coverage under the State Farm policy for Utley's damages. The court rejected Bolin's argument as contrary to his earlier representations to the court, which had led the court to believe that "once we resolved the issue of permission, that resolved the issue of coverage of the carrier for who employs you, Mr. Bolin." (Pl., at A–26, A–27 & A–29.)

In the first phase of the trial, the jury was asked:

> Did the Defendant, Michale [sic] Collie have permission express or implied to use the Plaintiff's vehicle?

(Pl., at A–53.) The jury returned a positive response. In the following phase, the jury found for Utley in the amount of $45,-000.00. Neither Bridges nor State Farm appealed from this judgment. The jury also awarded Bridges $5,000.00 in punitive damages from the defendant Collie.

Following the Ford County judgment, Utley filed an order of garnishment against State Farm, which removed the matter to this court. The plaintiff, Utley, has filed a motion for summary judgment, contending that the issue of coverage is resolved by the previous positions taken by State Farm, through its attorney, in the Ford County litigation. State Farm has filed a response and a cross-motion for summary judgment.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *Ewing v. Amoco Oil Co.,* 823 F.2d 1432, 1437 (10th Cir.1987). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985). Notwithstanding, the moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A hearing on the parties' motions was held on May 17, 1989. At that time, the court indicated its decision in the present matter. Consistent with the statements of the court at that time, and for the reasons discussed herein, the court grants the motion of plaintiff Utley.

In opposing the motion for summary judgment, State Farm argues that the Ford County jury's determination does not establish coverage under its policy for the injuries to Utley, and that it is not bound by statements made by Bolin in the Ford County litigation. Rather, State Farm argues that Utley is bound by the previous decision and prohibited from using the decision to establish coverage under the State Farm policy. Because the first two arguments advanced by State Farm are incorrect and must be rejected, it is unnecessary to address the third and last argument.

State Farm's first argument is that it is not bound by the jury's determination of permissive use of Bridges' car by Collie since there was no evidence that Jarrell Bridges (as opposed to his son, Derek) granted permission for Collie to use the car. In support of this argument, State Farm cites Kansas decisions requiring the presence of specified factors in order to establish coverage in second permittee cases (i.e., where A [the insured] allegedly permitted use of his car by B, who then permitted C to use the car). *Farmers Insurance Co. v. Schiller,* 226 Kan. 155, 597 P.2d 238 (1979); *Gangel v. Benson,* 215 Kan. 118, 523 P.2d 330 (1974). Because these factors allegedly do not exist in the present case, State Farm contends the Ford County determination that Collie was a permitted user of Bridges' car is invalid as a matter of law.

State Farm's argument might have some value in an appeal from the Ford County

judgment. However, as noted earlier, no appeal was taken from the state court decision. Having failed to pursue an appeal in that case, State Farm is not free to relitigate the issue here.

In an attempt to avoid this result, State Farm also argues that it is not bound by the earlier decision in Ford County, since it was not a "party" to that case. It cites *Bell v. Tilton*, 234 Kan. 461, 674 P.2d 468 (1983), in which the court held that an insurer's subsequent employment of an attorney who had previously defended a claim against the insured did not bind the insurer as to issues determined in the prior litigation. Citing *Hensley v. Hartford Accident & Indemnity Co.*, 451 S.W.2d 415 (Ky.1970), and *Earl v. Thompson*, 128 Ill. App.2d 32, 262 N.E.2d 320 (1970), the court concluded that "[t]he mere fact an insurance company retains an attorney to represent an insured against a lawsuit does not mean the attorney is also the insurance company's attorney capable of binding the insurance company."

*Bell* is inapplicable in the present case. This case does not involve, as did *Bell*, an insurer's employment of an attorney to defend the interests of its insured. In such a case, the insurer's interest is only hypothetical, and *Bell* and the cases cited therein properly hold that in such situations the insurer may reserve coverage issues and defenses for subsequent litigation. In the present case, however, State Farm's interest in the Ford County litigation was not hypothetical; it was direct and real. The action was in reality a subrogation action initiated by State Farm in order to recover sums allegedly owing to it. Having initiated the action to further vindicate its own interests, State Farm is bound by the results. That State Farm was not a nominal party in the litigation is irrelevant.

The jury's verdict in the Ford County litigation states that Collie had permission to use Bridges' car. Bolin, the attorney representing the interests of both State Farm and Bridges, had indicated to the Ford County court that this determination would resolve the issue of coverage.

If State Farm was dissatisfied with the result, it could have appealed from the Ford County judgment. It chose not to do so. Accordingly, it is bound by the determination of permissive use reached in that judgment. Summary judgment must therefore be granted in favor of plaintiff Utley.

Plaintiff Utley has moved for an award of attorney fees pursuant to K.S.A. 40–256, and presented an itemization of expenditures. This indicates the plaintiff had incurred $153.40 in expenses and 25.5 hours of attorney's services as of May 9, 1989. The court has concluded the total number of hours of attorney's services amounts to 36 as of the present date. Defendant State Farm has expressly conceded that the figures contained in the plaintiff's itemization are not unreasonable.

The defendant does argue, however, that attorney fees are not appropriate in the present case, asserting the existence of a good faith controversy between the parties. While this may have originally been the case, it ceased to be so when State Farm failed to appeal from the earlier decision in Ford County. By failing to do so, it clearly became bound by the results of that determination, and is responsible for the attorney fees incurred by the plaintiff in vindicating its present claim. Accordingly, the court grants an award of $4,473.40 (representing 36 hours @ a reasonable hourly rate of $120.00, plus $153.40 in expenses).

IT IS ACCORDINGLY ORDERED this 5 day of July, 1989, that plaintiff Utley's motion for summary judgment is granted. Attorney fees and expenses are awarded to plaintiff in the amount of $4,473.40.