Wanda SWITZER, Individually and as an Heir at Law of Amie Switzer, Deceased, Plaintiff,

v.

NEWTON HEALTH CARE CORPORATION, and Surinder Kumar, M.D., Defendants.

No. 88–1571–K.

United States District Court, D. Kansas.

April 23, 1990.

Kenneth L. Ingham, Wichita, Kan., for plaintiff.

Jay F. Fowler, Foulston, Siefkin, Powers & Eberhardt, David Steed, Turner & Boisseau, Wichita, Kan., for defendants.

MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This matter is presently before the court on the motions for summary judgment of Dr. Surinder Kumar and Newton Health Care Corporation, the defendants in this medical malpractice action. The defendants generally contend that the evidence

in the case fails to prove that any negligent actions on their part caused any injury to Amie Switzer. The court heard the arguments of the parties relating to defendants' motions on March 29, 1990. For the reasons discussed herein, the motions for summary judgment of the defendants are hereby granted.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R. Civ.P. 56(e)) (emphasis in *Matsushita*).

One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In the present case, the facts before the court indicate that Amie Switzer died *in utero* on July 14, 1990. Switzer and her mother, Wanda Switzer, were under the care of the defendants Newton Health Care Corporation and Dr. Surinder Kumar. The plaintiff alleges that Newton Health Care was negligent in failing to timely notify defendant Kumar of indications of fetal distress. The plaintiff contends that the obstetrical nurse employed by Newton Health Care failed to adequately monitor the fetus.

In support of these claims, the plaintiff has retained one expert witness, Dr. Jeffrey C. Northup. Dr. Northup testified that he has no opinion to a reasonable degree of medical certainty as to the cause of the cessation of fetal heart tone at 11:14 A.M. on July 14. Dr. Northup has testified that he believes Amie Switzer was brain dead within three or four minutes after the cessation of fetal heart tone.

In discussing the events occurring on July 14, Dr. Northup testified that he does not think that the obstetrical nurse "did anything wrong" prior to 11:14 A.M. However, Dr. Northup states that once the fetal heart tone ceased at 11:14 A.M., the nurse acted negligently in waiting 21 minutes to notify Dr. Kumar. As indicated earlier, Dr. Northup was unable to pinpoint the cause of Amie Switzer's death. However, as part of "a list of possibles from more probable to less probable," Dr. Northup states that an acute cord accident may have caused the cessation of fetal heart tone.

However, on the basis of the evidence before the court, it does not appear that the delay in notifying Dr. Kumar of the cessation in fetal heart tone caused or contributed to the death of Amie Switzer. Dr.

Northup has testified that the performance of a caesarean section would require 30 minutes, when performed under an appropriate standard of care. Yet, according to Dr. Northup, Amie Switzer was brain dead within three to four minutes of the cessation of heart tone. Thus, even without any delay in contacting Dr. Kumar, and even if Dr. Kumar was present at the time the fetal heart tone ceased, the evidence indicates that the ultimate result would have been the same.

In his deposition, Dr. Northup speculated that a change in the position of the fetus might have relieved the cord problem, which he had indicated earlier might have been the cause of the cessation of fetal heart tone. Dr. Northup was asked in his deposition about the nature of this opinion.

Q. But you have no opinion as to the cause of this infant's death other than saying it was a cord problem, correct?

A. I think it was an acute problem which would most likely in this case be a cord accident.

Q. Okay. And based upon your previous testimony you're not able to state to a reasonable degree of medical certainty that changing position would have saved this fetus, correct?

A. I can't say to a reasonable degree of medical certainty what would have happened but I can say that it should have been tried.

Q. Okay. Well, I understand what you're saying, but so the record is clear you're not saying that any change in position would have saved this fetus, correct?

A. I can't use the term would have. I would say could have.

(Northrup Depo., pp. 113–14.)

Thus, there is no satisfactory evidence before the court indicating that any action by either defendant on July 14, 1987 caused or contributed to the death of Amie Switzer. At the hearing of the present matter, the plaintiff stressed the events which occurred one week previously, on July 7. The plaintiff argues that during a well-being test performed on the fetus that day, the defendants failed to appropriately monitor the fetus. The plaintiff suggests that due to this failure to appropriately monitor, the defendants did not detect the life-threatening condition the fetus was experiencing.

However, as with his testimony relating to the events of July 14, Dr. Northup was unable to testify, within a reasonable degree of medical certainty, that the defendants' actions on July 7 caused any injury to the fetus. During the course of his deposition, Dr. Northup testified that the monitoring performed on July 7 indicated that "further investigation was necessary." Dr. Northup was then asked the degree of certainty involved in that opinion.

Q. All right. But at this point going back to your earlier answer you can not tie that to this fetal demise in this case within a reasonable degree of medical certainty or probability?

A. No, I can not.

(Northup Depo., p. 110.)

Moreover, Dr. Northup was unable to state that the monitoring that was performed on July 7 violated any standard of care. As stated earlier, Dr. Northup testified that the obstetrical nurse had not violated any standard of care prior to 11:14 A.M. on July 14, 1987, when she failed to immediately notify Dr. Kumar that the fetal heart tone had ceased. As to Dr. Kumar, the testimony of Dr. Northup also fails to indicate any violation of appropriate standards of care.

Q. So your testimony here today is you are not saying that Doctor Kumar deviated from appropriate standards of care on July 7th and that deviation resulted in the demise of the fetus?

A. I can not make that determination, no.

(Northup Depo., pp. 109–10.)

The plaintiff makes also makes an argument, based in part on *Hiatt v. Groce*, 215 Kan. 14, 523 P.2d 320 (1974), that the defendants' negligence in the present case is obvious to persons of common knowledge and experience, and that expert testimony is therefore unnecessary in the present case. In that case, the Kansas Supreme

Court recognized that allegations of medical malpractice ordinarily require proof by expert medical testimony, but noted that an exception existed where "the medical procedures employed are so patently bad that negligence or lack of skill is manifest to a lay observer." 215 Kan. at 19, 523 P.2d 320.

In the present case, however, the allegations against the defendants involve claims of inappropriate, or misinterpreted, electronic fetal heart monitoring, an activity not within the common knowledge and experience of the ordinary lay person. As a result, the plaintiff is obliged to present expert medical testimony establishing the alleged negligent actions of the defendants. The evidence offered, however, is either impermissibly speculative in nature, or demonstrates that the defendants' actions did not deviate from the appropriate standard of care or cause or contribute to the death of Amie Switzer.

IT IS ACCORDINGLY ORDERED.