**Carroll CASH, Plaintiff,**

v.

**The BOEING COMPANY, Defendant.**

**No. 98–1458–JTM.**

United States District Court, D. Kansas.

Dec. 1, 1999.

---

Sean M. Dwyer, Wichita, KS, for Plaintiff.

Vaughn Burkholder, William M. Anderson, Foulston & Siefkin L.L.P., Wichita, KS, for Defendant.

## MEMORANDUM ORDER

MARTEN, District Judge.

The plaintiff Carroll Cash has brought the present action against his former employer, The Boeing Company, alleging that he lost his job because of Boeing's discrimination against him because of his sex (male) and race (white). Currently before the court is the motion for summary judgment filed by Boeing. The court has reviewed the arguments submitted by the parties, along with the accompanying evidence, and finds that summary judgment is appropriate.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish

this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The uncontroverted facts establish that Cash worked at Boeing from 1984 until August 11, 1997 when he was terminated after complaints of sexual harassment. He was then 47 years old.

During his employment, Boeing had a policy against sex harassment in the workplace. Cash knew of the policy, having attended several crew meetings on the subject. As part of the sex harassment training, Boeing workers were told that offensive language or statements of a sexual nature would not be tolerated.

Dian Rogers was the personnel representative in Cash's area in 1996. In August of 1996, she received complaints about Cash from three employees. John Heidbreder told Rogers that Cash, referring in May of 1996 about a Vietnamese female worker, Dien Thi Phan, over whom Cash was lead, said: "Don't you think we should take that guk out back and shoot here? They all have smelly pussies don't they." (Rogers dep. at 21, 27, 52–58). Shirley Williams told Rogers that Cash grabbed her face and tried to kiss her. Williams also told Rogers that she had seen Cash rubbing the shoulders of employee Sharon McPherson. Julie DeGarmo told Rogers that Cash had made offensive comments and a gesture with his tongue. She had also seen him trying to kiss Shirley Williams and with his hands on Sharon McPherson's shoulders.

Rogers then undertook an investigation in which she interviewed fourteen employees, eight men and six women, along with Cash. Some of the employees reported that they had not witnessed Cash doing anything inappropriate. However, Rogers also spoke with Frances Beard who stated that she had seen numerous incidents involving Cash and other employees that she felt were very inappropriate, including a comment to another male worker about a female worker: that if she were taken out and "give her 2 or 3 beers, she'd be ready to fuck." And Daniel Bennett told Rogers that Cash used vulgar language and that Cash had asked him if he had queer blood in him because he was always around guys. Bennett also reported that Cash would say things like, "How are you cocksuckers doing?" (Dep.Exh.15).

When Rogers spoke with Cash, he denied all the allegations of harassment. He was sure that the allegations had been advanced by the various employees. Rogers has testified that she found Cash was not credible in his denials, and in her opinion, after reviewing the entire investigation, Cash had committed acts of sexual harassment.

Rogers forwarded a summary of her investigation to R.D. (Dick) Rader who is the Discipline Coordinator for Boeing. On October 21, 1996, Cash was given a Corrective Action Memo (CAM) and a three day suspension without pay for violating a company rule by "using offensive language and making statements of a sexual nature in the work area." Cash was moved to a new work area (CV7), and warned that additional violations might result in additional penalties, including termination.

Cash filed a grievance with the International Association of Machinists. While this grievance was pending, Rogers received a complaint of harassment from Cash's new work area.

Rogers conducted another investigation. She again interviewed several persons including Cash. Rogers testified in her deposition that she found substantiation for the latest allegations—that Cash approached a newly hired female worker so close as to make her uncomfortable, that Cash would sing in her ear, and would talk in a sexually explicit manner around her. Rogers again denied the truth of the allegations, although he admitted that complaints about his behavior were made.

Rogers felt the latest allegations were "very borderline," and gave Cash "the benefit of the doubt." Cash was not subjected to discipline, but was counseled by Rogers and a union representative.

In January 1997, the union agreed to close the grievance with no change in the discipline imposed. Cash was moved out of his lead position.

In early 1997, Rogers was replaced by Bernie Grant as the personnel representative in the area in which Cash worked. In April of 1997, four workers came to Grant to state that Cash had been behaving in an inappropriate manner to the female workers in the area. Grant did not conduct any investigation or impose discipline. Instead, he asked Cash's manager, Steven Glenn, to discuss the complaints with Cash and counsel him. Cash was moved to another area.

In early August of 1997, two female new hires, Trudy Miller and Herlinda Dowler, made additional complaints against Cash. At the time, Cash was the lead in the Part Mark area. Miller told Grant that Cash was telling inappropriate jokes, making statements she felt were inappropriate, touching her, and at one point, Cash put a radio antenna down her shirt. Dowler, an Hispanic female, told Grant of inappropriate comments by Cash, touching and staring, and also confirmed the incident with the antenna.

Grant commenced an investigation in which he interviewed at least nine persons. Jerri Snyder had observed Cash putting the antenna down Miller's shirt. Dianne Adams felt that Cash should not be fired, but stated she believed Cash had a problem, and that he was trying to control it. Sandy Mewhinney made a similar statement.

Cash denied the allegations. However, Grant did not believe Cash. He concluded that the allegations against Cash were true. Boeing decided to terminate Cash for violating its rules, including unacceptable conduct and inappropriate language. The termination was approved by Grant, Rader, Cash's supervisor, Terry Breth, and Grant's supervisor, Suzanne Scott.

Cash filed a grievance with the union. The union dropped the grievance after reviewing the results of Boeing's investigation.

In November of 1998, Cash submitted a resume to Boeing. Boeing has a policy that, after an employee has been discharged for cause, they are not eligible for rehire prior to 18 months after the termination. Cash's resume was submitted 15 months after his discharge. In addition, at the time Boeing was downsizing, and was not hiring in any position for which Cash was qualified.

Cash is not aware of any reason to believe that the four persons who approved his termination (Grant, Breth, Scott, and Rader) intended to discriminate against him because of his sex or race.

In his response to the motion for summary judgment, Cash denies making the harassing comments which have been attributed to him. He further challenges the credibility of various witnesses. In this vein, Cash notes that the various witnesses to the antenna incident have described it somewhat differently. He also stresses that Dien Thi Phan told Rogers that she had never heard Cash make any "sexual or racial comments." (Dep. Exh.10) Rogers' notes of her interview with Dien Thi Phan, however, proceed to relate additional comments, after Phan asked if her statement would be kept secret. She stated that Cash "is very loud when talking to her and yells in the shop as he goes through because he doesn't think she can understand him." (Id.)

Cash also stresses that McPherson gave two versions of events, one on September 4, 1996 and a second on October 1, 1996. In the first statement McPherson denied having any problems with Cash, and denied having any knowledge of Cash touching anyone's back or shoulders. Cash states that Rogers obtained the second statement only after threatening McPherson.

There is no evidence that Rogers unfairly threatened McPherson. Rogers called McPherson back for a second interview to explain conflicts in the statements she was receiving. Rogers' notes indicate that McPherson

then opened up more and said that Cash had put his hands on her shoulders but that she was not offended by it and did not ask him not to do it. What she is offended by is his language. He uses sexually explicit language, uses sexual language about women and generally talks about sex in a descriptive manner. She could not give me any examples.... No one else in the shop talks as badly as Cash does, he carries it to an extreme.

She has not seen him touch anyone else. He does flirt with women in the area and when a new woman comes into the shop he heads straight for her.

(Dep.Exh.11).

The various qualifications Cash advances against the harassment allegations might be particularly relevant if the question before the court were whether Cash had committed sexual harassment. However, the matter before the court is a different matter: whether Boeing had reason to believe Cash might be committing acts of sexual harassment, or whether Boeing terminated Cash for a discriminatory purpose. The uncontroverted facts establish that complaints of sexual harassment against Cash were made by many Boeing workers, that the complaints continued despite counseling, that none of these complaints were facially incredible, and that the managers assigned to the matter believed the complaints.

### Conclusions of Law

■ A plaintiff can show intentional discrimination in violation of 42 U.S.C. § 1981 either by providing direct evidence of discrimination or indirect evidence, employing the burden-shifting framework first articulated in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). That framework was recently summarized in *Perry v. Woodward*, 188 F.3d 1220, 1228 (10th Cir.1999) (citations omitted):

A plaintiff relying on *McDonnell Douglas* bears the initial burden of establishing a prima facie case by a preponderance of the evidence. If the plaintiff establishes her prima facie case, a rebut-

table presumption that the defendant unlawfully discriminated against her arises. The defendant must then articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff. If the defendant is able to articulate a valid reason, the plaintiff can avoid summary judgment only if she is able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reason was pretextual.

In *McGarry v. Board of County Com'rs of County of Pitkin*, 175 F.3d 1193 (10th Cir.1999), the Tenth Circuit recently held that a plaintiff had presented sufficient direct evidence in a reverse discrimination case. In that case, the plaintiff, a white applicant for two maintenance positions, had offered evidence, that, when he asked why his application was denied, the defendant county's personnel director told him that the positions were "minority hirings." 175 F.3d at 1196. The court held that this comment, coupled with an explicit county policy under which "minority candidates who are qualified for a position, but not necessarily the best qualified, are strongly considered for hire over non-minority candidates," *Id.*, at 1200 n. 5, provided direct evidence of discriminatory intent.

■ In the present case, by contrast, Cash has not attempted to provide any direct evidence of discriminatory intent. Cash has not provided any evidence of what could be termed direct evidence of a discriminatory intent on the part of Boeing.

Cash does argue that there is indirect evidence of discrimination. That is, he focuses on seven instances of sexual harassment at Boeing, in which the harasser was a minority or a woman and who allegedly received more lenient treatment than Cash. However, this approach improperly jumps to the *McDonnell Douglas* framework (creating a prima facie case of discrimination based upon different treatment of similarly situated individuals) without meeting the "background circumstances"

test required in reverse discrimination cases.

Cash, who is white and male, does not belong to any historically disfavored group. As a result, the standard prima facie case is adjusted for the specific context of reverse discrimination, and the plaintiff must show some background circumstances which support the suspicion that the defendant is that unusual employer who discriminates against the majority. *Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir.1995) *Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 248 (10th Cir.1993); *Elmore v. Capstan, Inc.*, 58 F.3d 525, 530–31 (10th Cir.1995); *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir.1992); *Livingston v. Roadway Express*, 802 F.2d 1250, 1252 (10th Cir. 1986). Here, virtually all of the persons identified in the factual narrative are, like Cash himself, white.[1] All of the decision-makers involved in the termination are white. Two of the workers who provided evidence that Cash had sexually harassed workers are male. Three of the four persons involved in the decision to terminate Cash are male. Cash has not provided any evidence that these persons, or Boeing generally, discriminate against white males.

Moreover, even if the court were to consider the alleged disparate treatment accorded other workers, the court must conclude they are so distinct from Cash's situation that they cannot serve as any evidence of discriminatory intent. Boeing's case files on each of the specific instances are set forth in Docket No. 57, which were filed under seal. Each of these instances tends to show the wide variety of ways the co-workers can make the employment environment difficult. But what the cases have in common is that they each involve a single complaint of harassment, or, in one instance, complaints by two workers made within three days of each other. In almost all of the cases,

some form of disciplinary action was taken. *In none of the cases is there any indication of a continuing violation of the company's harassment policy.*

In the present case, Cash was a lead worker with authority over his fellow workers. He had received training about the company's harassment policy. The company had received complaints about his behavior from a number of workers. Those complaints were corroborated by an investigation. Cash denies the truth of the complaints, but has admitted that the complaints were made. Cash was repeatedly moved to new work areas and given counseling. His behavior, as reported to Boeing by the complaints of his co-workers, continued. None of the seven incidents cited by Cash involve similar behavior.

Even assuming that Cash had made out a prima facie case of reverse discrimination, the court finds that summary judgment should be granted, since the evidence establishes that Boeing had a legitimate, nondiscriminatory reason (ending workplace sexual harassment) for terminating Cash, and there is no evidence that reason was pretext for illegal discrimination. As noted earlier, the uncontroverted evidence is that the Boeing personnel who investigated the complaints against Cash believed that the complaints were true. Cash has failed to offer any evidence that the complaints were unworthy of credit or that the investigating officers disbelieved the complaints. *Cf. Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1080 (10th Cir.1999).

▆ Finally, Cash has advanced a claim of discriminatory refusal to rehire. This claim is wholly unsupported. As noted earlier, Boeing policy prohibits rehiring workers previously discharged for cause within the previous 18 months. Cash applied for rehire prior to this time. Further, the evidence also provided by the defendant shows that Boeing was downsizing at the time. Cash has stated in his

---

1. The two exceptions, Herlinda Dowler and Dien Thi Phan, are Hispanic and Vietnamese, respectively.

response he believes that Boeing was in fact hiring at the time, but this was not based on first-hand knowledge—he only heard from someone else that Boeing had been doing some hiring. Nor does Cash offer any evidence that these alleged new hires reflect illegal discrimination, such as hiring only women or minorities.

IT IS ACCORDINGLY ORDERED.