# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J.  Fisher, Jr.                                                                    Elisabeth A. Shumaker
Clerk                                                                                         Chief Deputy Clerk

May 13, 1999

**TO:**  ALL RECIPIENTS OF THE OPINION

**RE:**  97-1239, *McGarry v. Board of County Commissioners*
Filed on April 29, 1999


The slip opinion filed April 29, 1999, contains two typographical errors.  Please note the following corrections:

1.  On page 9, footnote number one is misnumbered.  The footnote should be footnote number two.  All subsequent footnotes should be renumbered accordingly.

2.  On page 13, footnote number four (previously footnote number 3), the text of the footnote should read:

   Because the district court erred in denying McGarry's reverse discrimination claim due to direct evidence of discrimination, we need not consider McGarry's claim on Notari/McDonnell Douglas analysis.

A copy of the corrected opinion is attached.

                                        Sincerely,
                                        Patrick Fisher, Clerk of Court


                                        Keith Nelson
                                        Deputy Clerk


encl.

F I L E D
United States Court of Appeals
Tenth Circuit

APR 29 1999

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MICHAEL J. MCGARRY,

      Plaintiff-Appellant,

v.

BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY
OF PITKIN, STATE OF COLORADO

      Defendants-Appellees.

No. 97-1239

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 95-S-1677)

---

Thomas E. Goodreid, Denver, Colorado, for Plaintiff-Appellant.

Cathy Havener Greer (Malcolm S. Mead, with her on the brief), of Hall & Evans, L.L.C., Denver, Colorado, for Defendants-Appellees.

---

Before **EBEL, HOLLOWAY** and **MURPHY,** Circuit Judges.

---

**HOLLOWAY,** Circuit Judge.

---

      Plaintiff/Appellant Michael J. McGarry (McGarry) filed suit against

defendant/appellee Board of County Commissioners of Pitkin County, Colorado (Board).

McGarry's second amended complaint alleges that the Board engaged in reverse discrimination by not hiring McGarry on two occasions and retaliated against McGarry by not considering him for employment after he filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), these actions constituting violations of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3. The Board filed a motion for summary judgment as to all claims. The district court referred the matter to a magistrate judge who recommended denial of the Board's motion. The district court rejected the magistrate judge's recommendation and granted summary judgment on the reverse discrimination claims and the retaliation claim in favor of the Board.

McGarry timely appeals the district court's grant of the motion for summary judgment in favor of the Board. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand for proceedings consistent with this opinion.

I

McGarry is a white male who is a resident of Pitkin County, Colorado. Pitkin County is located in the Roaring Fork Valley. In April 1993, in response to a newspaper advertisement, I App. at 93, McGarry submitted a written application for a position as a building maintenance worker at the Pitkin County Airport Building Maintenance Department. II App. at 128-31. Thirteen people applied for the position. Filiberto Meraz, a male of Hispanic background, was hired to fill the position. II App. at 197.

Scott Mackey was the Board's facilities maintenance manager with authority to

2

hire and fire people for the crew that takes care of the Aspen airport, <u>inter alia</u>.  II App. at 138.  Mackey testified in his deposition that Meraz was hired in compliance with a Board policy to prefer applicants who are current County employees over qualified, non-employee applicants.  I App. at 74; II App. at 144.  At the time of his hiring, Meraz was employed in another department of Pitkin County.  II App. at 197.

In January 1994, McGarry submitted a written application for another building maintenance position.  There were five other applicants.  McGarry was interviewed but was not selected; instead, Vernard Oliver, an African-American male, was hired to fill the position.  II App. at 197.  If Oliver had declined the offer of employment, Mackey would have offered the position to McGarry.  II App. at 142.

Mackey notified McGarry in February 1994 that McGarry had not been selected for the position.  II App. at 144.5.  However, McGarry said Mackey told him that he would keep McGarry's application on file and would contact McGarry if a similar job developed.  II App. at 156.  The Board's policy is to keep applications on file, II App. at 192, but consider them for relevant positions upon request by the applicant to activate the application.  I App. at 46.

After learning he had not been selected for the January 1994 job, McGarry contacted Cheryl Cumnock (Cumnock), Pitkin County's Director of Personnel.   II App. at 165.  As the Director of Personnel, her duties included overseeing the general management policies for the personnel department in the organization.  Though she was

not involved in the hiring process, when McGarry came to Cumnock they began reviewing the circumstances of the hiring of Meraz for the April 1993 position. II App. at 172. Cumnock spoke with Mackey on February 10, 1994 about McGarry's applications. II App. at 175. At this meeting, Cumnock took notes, including writing down a notation that she was concerned McGarry might file an EEOC charge. II App. at 176.

Cumnock met with McGarry twice in February 1994 to discuss her investigative efforts. At the first meeting, McGarry presented Cumnock with a list of questions he had prepared concerning the hiring process. Cumnock made notations on the list. II App. at 136, 182. One of the questions concerned the Board's hiring preference for Roaring Fork Valley residents. Following reference to the policy, Cumnock wrote in the word "minorities." II App. at 136, 182. At her deposition, Ms. Cumnock agreed that "Minorities" was in her handwriting but she did not recall what this meant. Id. at 182. At this meeting Cumnock told McGarry that Oliver was hired because he was better qualified. II App. at 175-76.

Cumnock and McGarry met again on February 16, 1994. McGarry states Cumnock then told him that the Board no longer took the position that Meraz and Oliver were better qualified candidates. Cumnock told McGarry: " . . . these hires were minority hirings . . .", II App. at 159, "the last three hirings of [maintenance] workers were minorities, affirmative action hirings, two blacks and an Hispanic . . . ." II App. at 159. Cumnock denies having made these statements. II App. at 182. In response to plaintiff's

4

interrogatories the Board asserted that Meraz and Oliver "were hired in compliance with Pitkin County's Affirmative Action Plan." Id. at 197.

Two policy statements issued by Pitkin County are relevant. The first was a statement "Policy 115 Recruitment" dated February 26, 1991, which provided that when a job vacancy occurs, first consideration for appointment will be given to County employees working in the department, if qualified. II App. at 190. The policy statement also provided that when a vacancy is not filled by a current qualified County employee, it is the County's desire to give adequate notice to candidates residing in the Roaring Fork Valley. Id. at 191. Paragraph 10 of Policy 115 provided:

> Whenever possible, current County employees should be given preference in selection for interviews and/or the job vacancy. Candidates residing within the Roaring Fork Valley should also receive preference in the consideration of applications. Minorities, women, disabled and other protected-group applicants should also be given every consideration and opportunity for employment or advancement.

II App. at 192.

On the same date (February 26, 1991) when Policy 115 was issued, the County also issued "Policy 140 Equal Employment Opportunities" which provided in its second paragraph:

> **II. PROCEDURE**
>
> In fair employment practices, the County will:
> . . .
> (2)  Make employment decisions upon an individual's qualifications and job related requirements of the position, giving due consideration to the meaning of the phrase, "is an affirmative action employer." This means that minority

5

candidates who are qualified for a position, but not necessarily the best qualified, are strongly considered for hire over non-minority candidates;

(3)     Ensure that all personnel practices and actions will be administered without regard to race, color, religion, sex, age, national origin or handicap;

(4)     Ensure that minorities and women receive equal opportunity for training and management development programs . . . .

II App. at 132.

On March 3, 1994, McGarry filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging he had not been hired for either position due to his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).[1]  I App. at 86.  The Commission conducted an investigation, reviewing both parties' submissions, and issued a determination letter that the evidence presented to it did not establish that the Board violated Title VII.  I App. at 87.

In April 1994 the County advertised another building maintenance worker position.  II App. at 210.  McGarry did not learn of the position opening until after the application deadline had expired and thus did not submit an application.  Though having his application on file, the Board did not consider him for the position.  II App. at 144. The Board's actions on that occasion are the grounds asserted for McGarry's retaliation claim.

---

[1]  "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge an individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."

## II

## A

### The Rulings of the Magistrate Judge and the District Judge

The trial judge referred the Board's summary judgment motion to a magistrate judge. The magistrate judge recommended denial of the motion, concluding that McGarry had presented material facts on both the reverse discrimination and the retaliation claims sufficient to require resolution by a fact-finder. With respect to the reverse discrimination claim, the magistrate judge relied on Cumnock's statement to McGarry that Meraz and Oliver were minority hirings as evidence of reverse discrimination. III App. at 283, 290-91. The magistrate judge further found Mackey's promise to consider McGarry's application for future job openings, III App. at 292, Mackey's knowledge that McGarry had filed a charge with the EEOC in March 1994, id. at 293, and the Board's subsequent failure to consider McGarry for the April 1994 position, to be evidence of the Board's adverse action in retaliation against McGarry's protected activity. III App. at 292.

The Board timely objected to the magistrate judge's recommendation. The district judge rejected the magistrate judge's recommendation and granted the motion for summary judgment on both the first and second claims of plaintiff of reverse discrimination and his claim of retaliation under Title VII. IV App. at 344. Incorporating by reference the background facts outlined in the magistrate judge's recommendation, IV

App. at 333, and applying this circuit's decision in <u>Notari v. Denver Water Dep't</u>, 971 F.2d 585, 588 (10th Cir. 1992), <u>inter alia,</u> as the law applicable for a claim of reverse discrimination, the district judge concluded McGarry had not presented facts sufficient to establish a prima facie case of reverse discrimination. IV App. at 340.

First, the court held that the plaintiff had not presented sufficient evidence to show that the Board was the unusual employer who discriminates against the majority, IV App. at 336, or that but for his race plaintiff would have been hired. IV App. at 340. Thus, McGarry could not establish a <u>Notari</u> presumption of reverse discrimination.

Second, the court rejected the magistrate judge's view that Cumnock's statement that Meraz and Oliver were "minority hirings" was evidence of direct discrimination. The judge reasoned that because Cumnock was not involved in the hiring process, her statement was no more than an expression of personal opinion. IV App. at 338. Third, even if McGarry had established a prima facie case of reverse discrimination, the court concluded the Board had offered a legitimate, non-discriminatory reason for hiring Meraz and Oliver which McGarry had not shown to be pretextual. IV App. at 340-41.

The district judge also rejected the magistrate judge's recommendation with respect to the retaliation claim. The court concluded there was no violation because the Board had a policy of considering old applications only upon request of the applicant and the evidence was undisputed that McGarry did not make such a request. Thus the judge found that the defendant Board had provided evidence that dispelled an inference of

8

discrimination.  IV App. at 343-44.

**B**

**The Standard for Summary Judgment**

We review a grant of a motion for summary judgment *de novo*, applying the same legal standard used by the district court.  See Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(c).  We view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  See Byers, 150 F.3d at 1274.

The Board, as the moving party, bears the initial burden of showing there are no disputed genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Because the Board has met its initial burden,[2] the burden shifted to McGarry to

---

[2]  The Board submitted the following in its Motion for Summary Judgment and Memorandum Brief in Support Thereof to show that there were no disputed facts regarding McGarry's reverse discrimination and retaliation claims: a letter to EEOC from Cheryl Cumnock showing that, as of February 1, 1994, eight of eleven employees with the Pitkin County Airport Building Maintenance Department were white, I App at 43; statements from Mackey's deposition that indicate Meraz was hired pursuant to a preference for current county employees, id. at 57-58; statements made by Cumnock in her deposition stating that county employees were not hired in accordance with an affirmative action plan, id. at 80; the EEOC's determination letter stating its investigation did not establish a violation of Title VII by the defendant Board, id. at 87 (the determination letter would be admissible under Fed. R. Evid. 803(8)(c) and Barfield v. Orange County, 911 F.2d 644, 649 (11th Cir. 1990)); and

show specific facts supporting a genuine issue for trial as to all of the essential elements of his case. Celotex, 477 U.S. at 324; Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996). "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." Lawnmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997); see also Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993).

## C

### McGarry's Reverse Discrimination Claims

Title VII of the Civil Rights Act of 1964 declares it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ." 42 U.S.C. § 2000e-2(a)(1).

Title VII prohibits discrimination against whites as well as non-whites. McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 280 (1976); Taken v. Oklahoma Corp. Comm'n, 125 F.3d 1366, 1368 (10th Cir. 1998). There are two general methods by which

---

Oliver Vernard's Application for employment, which provides Vernard's experience and qualifications for the airport maintenance position, id. at 97-98. Together, these submissions are sufficient for defendant Board to satisfy its initial burden to support a motion for summary judgment.

a plaintiff may proceed on a reverse discrimination claim. The plaintiff may proceed by relying on a version of the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting analysis to test whether a person who is a member of a historically favored group is entitled to the McDonnell Douglas presumption of discrimination. See Taken, 125 F.3d at 1369; Reynolds v. School Dist. No. 1, 69 F.3d 1523, 1534 (10th Cir. 1995); Notari v. Denver Water Dept., 971 F.2d 585, 588-89 (10th Cir. 1992).

In addition, a plaintiff may recover if the plaintiff can demonstrate he or she is the victim of reverse discrimination by "direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff." Notari, 971 F.2d at 590; see also Taken, 125 F.3d at 1369. We are persuaded that McGarry presented sufficient direct evidence of reverse discrimination to avoid summary judgment. We note these facts in the record showing a genuine issue on McGarry's claim that the Board discriminated against McGarry by hiring Meraz and Oliver over him. After McGarry provided a written list of questions to her, Cumnock, the County Personnel Director, II App. at 165, conducted an investigation into why McGarry had not been hired. II App. at 172, 182. On the written question list, Cumnock made the notation "minorities" next to one of McGarry's questions though in her deposition she said she did not recall what she meant by that notation; she acknowledged the written "minorities" notation was in her handwriting. II App. at 182.

As noted earlier, McGarry testified by deposition that Ms. Cumnock had told him "these hires [Meraz and Oliver] were minority hiring . . . ," II App. at 159, and that "the last three hirings of maintenance workers were minorities, affirmative action hirings, two blacks and an Hispanic . . . ." II App. at 159. While Cumnock denied making these statements, at the summary judgment stage we must give the benefit of the doubt to McGarry. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). Further, in assessing the record, the shift in Ms. Cumnock's story from relying on Meraz's and Oliver's assertedly better qualifications to relying on their being "minorities" is indicative of pretext.[3]

The Board argues that Cumnock's statements are not evidence of discrimination because she did not possess the authority to hire McGarry, Meraz or Oliver. Thus, the Board asserts, her statements amount to mere personal opinion. We disagree. Despite the fact that she did not exercise hiring authority, Cumnock conducted an investigation as to why McGarry was refused employment. As noted, she recorded her findings and told McGarry that Oliver and Meraz were "minority hirings . . . affirmative action hirings . . . ." II App. at 159. These were not the statements of an underling without significant responsibility. As noted earlier, as Personnel Director for the County, Ms. Cumnock had

---

[3] Though neither party raises the issue, we assume that Cumnock's statements are evidence that would be admissible at trial, as required by Fed. R. Civ. Pro. 56(c), because no objection to the statements' inclusion in McGarry's Opposition to the Board's summary judgment motion was raised. See Thrasher v. B&B Chem. Co., Inc., 2 F.3d 995, 998 (10th Cir. 1993).

12

the duty of overseeing the general management policies of the personnel department in the organization. II App. at 165. Thus when she reported these conclusions after her investigation of the Meraz and Oliver hirings over McGarry, these statements were within the scope of her agency or employment. Indeed, Ms. Cumnock recorded in her notes information obtained from Mackey about the hiring process. II App. at 181.

At this summary judgment stage of this case, we must view all such evidence and the reasonable inferences drawn therefrom in the light most favorable to McGarry. Doing so, we hold that there was sufficient direct evidence of reverse discrimination to survive summary judgment.[4] Ms. Cumnock's statements that those hired were not better qualified than McGarry and that these hirings were minority affirmative action hirings, statements made against the backdrop of the County's Policy Statements, do constitute direct evidence that supports an inference of reverse discrimination.[5]

**D**

**McGarry's Retaliation Claim**

---

[4] Because the district court erred in denying McGarry's reverse discrimination claim due to direct evidence of discrimination, we need not consider McGarry's claim on Notari/McDonnell Douglas analysis.

[5] For example, we note again Policy 140 which provided in part that the County will give due consideration to the meaning of the phrase "is an affirmative action employer . . . This means that minority candidates who are qualified for a position, but not necessarily the best qualified, are strongly considered for hire over non-minority candidates." II App. at 132 (emphasis added). Here the direct evidence from Ms. Cumnock's admissions must be weighed together with the policy statements. Together we feel they can support an inference of reverse discrimination. Thus McGarry's reverse discrimination claims should not have been dismissed on summary judgment.

13

The district court also granted the Board's motion for summary judgment with respect to McGarry's retaliation claim. Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Title VII retaliation claims generally proceed under the McDonnell-Douglas burden-shifting analysis. See Sauers v. Salt Lake County, 1 F.3d 1122, 1128 (10th Cir. 1993). To establish a prima facie case of retaliation under Title VII, McGarry must show: (1) that he engaged in protected opposition to discrimination; (2) adverse action by the Board subsequent to the protected activity; and (3) a causal connection between McGarry's protected opposition and the adverse action. Griffin v. Colorado, 17 F.3d 1323 (10th Cir. 1994); Archuleta v. Colorado Dept. of Institutions, Div. of Youth Servs., 936 F.2d 483, 486 (10th Cir. 1991).

McGarry clearly meets the first element of the retaliation test because his filing of the EEOC charge on March 3, 1994, is an act of protected opposition to discrimination. We also feel that the failure to consider McGarry for the position of building maintenance

14

worker, advertised in April 1994, satisfies the "adverse action" prong.[6]

We are persuaded that McGarry has shown sufficient facts to establish a causal connection between his March 1994 EEOC charge and the Board's failure to consider his previously rejected application for the April 1994 position. The requisite causal connection may be shown by producing "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Burrus v. United Telephone Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982). McGarry has submitted evidence that he was qualified for the April 1994 position. He also has shown that he was promised by Mackey in January 1994 that Mackey would keep McGarry's application on file and notify McGarry of any future openings. County policy states that when a vacancy is announced, personnel will consider both responding applications and applications already on file. In March 1994 McGarry filed his EEOC charge. One month later, a position opened that McGarry was qualified for, but he was not considered for the position. The record shows Mackey was informed of McGarry's EEOC charge prior to the date the vacant position was announced. Clearly, for purposes of summary judgment, this evidence and the reasonable inferences drawn therefrom, together with the close temporal relationship between the EEOC charge and the failure to consider McGarry's application, demonstrate that McGarry has met his burden of

---

[6] The Board does not challenge the district court's assumption that McGarry satisfied this element of the retaliation claim.

15

establishing a prima facie case of retaliation. See Candelaria v. EG&G Energy Management, Inc., 33 F.3d 1259, 1261-62 (10th Cir. 1994).

The burden then shifted to the Board to show a legitimate reason for not considering McGarry's prior application. The Board proffers two reasons for not considering McGarry's prior application. First, the Board's practice is to not consider such applications unless the applicant specifically notifies the Board that he or she wishes to reactivate a prior application for a particular job opening. Here, the evidence is undisputed that McGarry did not provide such specific notice. Second, McGarry was employed elsewhere in April 1994. While we view the second proffered reason as insufficient, we are persuaded that the Board's first reason – its practice of not activating prior applications unless specifically notified – sufficient to shift the burden to McGarry to show the Board's reason is a mere pretext for retaliation.

The district court held that McGarry failed to sustain his burden to show the Board's reasons were pretextual. We disagree. McGarry submitted evidence that in February 1994, Mackey apologized for not having called McGarry about the second position McGarry applied for; that Mackey said he would keep McGarry's application and if another similar job developed, Mackey would contact McGarry about it. II App. at 156. This showing created an inconsistency and a factual dispute as to the genuiness of the Board's alleged practice of reviewing prior applications only upon specific request. This fact issue must be resolved by the fact-finder.

16

Accordingly, the summary judgment is **REVERSED** and the cause is

**REMANDED** for further proceedings on the two reverse discrimination claims and the

retaliation claim.