Jennifer J. JONES, Plaintiff,

v.

RENT–A–CENTER, INC., Defendant.

Civil Action No. 01–2320–CM.

United States District Court,
D. Kansas.

Dec. 3, 2002.

Mark A. Buchanan, Sanders, Simpson, Fletcher & Smith, L.C., Kansas City, MO, Amy L. Coopman, Borel & Associates, Olathe, KS, for plaintiff.

Michael Coles, Dan C. Dargene, Winstead, Sechrest & Minick, P.C., Dallas, TX, Tammy L. Horn, Stinson Morrison Hecker LLP, Overland Park, KS, Sara E. Welch, Stinson Morrison Hecker LLP, Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Pending before the court is defendant Rent–A–Center, Inc.,'s Motion for Summary Judgment (Doc. 49). Plaintiff Jennifer J. Jones, a former employee of defendant, alleges defendant sexually harassed her and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* As set forth below, defendant's motion is granted in part and denied in part.

### I. Facts [1]

● **The Parties**

Plaintiff began her employment with defendant in December 1999, serving as an

---

**1.** All facts discussed in this section and elsewhere in the opinion are either uncontrovert-

Account Manager at one of defendant's stores located in Kansas City, Kansas. Plaintiff's supervisors during her employment with defendant included John Grimsley, a Store Manager, and Steven Richardson, an Assistant Manager. Plaintiff claims that Todd Shreeves was another of her supervisors. In his affidavit attached to defendant's motion for summary judgment, Mr. Shreeves stated he was employed by defendant as an Inside/Outside Assistant Manager in 1999 and 2000, and that he "supervised [plaintiff] in the performance of her duties as an Account Manager." (Def.'s Mot. Summ. J. Attach. 15, at 1). Even though defendant states Mr. Shreeves had no supervisory authority, in viewing the evidence in the light most favorable to the plaintiff, the court must accept for purposes of this motion for summary judgment that Mr. Shreeves was one of plaintiff's supervisors. John Lacy, a Market Manager, supervised Mr. Grimsley. In her capacity as an Account Manager, plaintiff was neither a managerial nor supervisory employee.

## A. Plaintiff Reports Alleged Harassment by Mr. Grimsley

### 1. July 2000 Report to Mr. Lacy

In July 2000, plaintiff complained to Mr. Lacy that Mr. Grimsley had sexually harassed her.[2] Mr. Lacy's notes indicated plaintiff told him that (1) Mr. Grimsley agreed with a customer that plaintiff looked good; (2) Mr. Grimsley said he was stepping down as a manager at the end of the month; (3) Mr. Grimsley told plaintiff he did not like her talking to Mr. Lacy; (4) Mr. Grimsley acted like a child when he got mad; (5) Mr. Grimsley added routes to plaintiff's account without telling her; (6)

Mr. Grimsley's wife and children were in the store pulling files; and (7) Mr. Richardson's children were in the store doing things.

After he received this verbal complaint, Mr. Lacy asked plaintiff to write a statement describing plaintiff's concerns. On July 24, 2000, plaintiff gave Mr. Lacy a handwritten note documenting her complaints that: (1) Mr. Grimsley said, "You need a Sugar Daddy in your life and I have the application whenever you are ready;" (2) Mr. Grimsley told plaintiff he had a Playboy bunny tattoo on his buttocks; (3) Mr. Grimsley opened the door for plaintiff so that plaintiff's buttocks would be in his face, especially when she was wearing a dress; (4) Mr. Grimsley would occasionally pass plaintiff behind the counter and brush against her; (5) Mr. Grimsley told plaintiff, "When you walked in here you almost made me have a heart attack;" (6) Mr. Grimsley stated, "You make me feel like I was sixteen again;" and (7) Mr. Grimsley told plaintiff about his opportunities to have sexual intercourse while on vacation.

Plaintiff also presents evidence indicating she was harassed by Mr. Grimsley in additional ways that she did not mention to Mr. Lacy. Specifically, plaintiff claims that Mr Grimsley: (1) told plaintiff that she "looked hot in that dress"; (2) told plaintiff, "I know you can get any guy you want"; (3) asked plaintiff to go dancing with him; (4) grabbed plaintiff's buttocks while she was working at the customer service counter; (5) deliberately bumped into plaintiff's buttocks; (6) engaged in "non-stop flirting"; (7) told plaintiff, who is African–American, "[o]nce you go black,

ed in accordance with District of Kansas Rule 56.1, or are viewed in the light most favorable to plaintiff as the non-moving party pursuant to the applicable summary judgment standard.

**2.** According to plaintiff, Mr. Grimsley began making the purportedly harassing comments in March or April of 2000.

you'll never go back"; (8) also told plaintiff, "[t]he blacker the berry, the sweeter the juice"; (9) took plaintiff with him on field trips so that he would be in close proximity to her; (10) tried to look up plaintiff's dress; (11) regularly hit plaintiff on the hips while she was entering company vehicles; (12) frequently complimented plaintiff's appearance in front of customers; and (13) complained in plaintiff's presence about his wife's extramarital affair.

Later on the same day, July 24, 2000, plaintiff informed Mr. Lacy that "everything was going fine" at the store. After July 24, 2000, plaintiff complained of no further harassment by Mr. Grimsley.

### 2. March and April, 2000 Conversations with Mr. Shreeves

Plaintiff states that, prior to making this report to Mr. Lacy, at some point in March or April of 2000, plaintiff told Mr. Shreeves about at least some of this conduct. (Pl's. Mot. Summ. J., Attach. C at 124:15–125:6). The record is unclear as to whether plaintiff reported all of the above incidents, whether plaintiff informed Mr. Shreeves that she was complaining of sexual harassment, and when, specifically, each incident occurred and when plaintiff reported it. However, the facts are uncontroverted that in response to plaintiff's question why Mr. Grimsley "kept on bumping up against her," Mr. Shreeves replied, "Oh, that's John." *Id.* Plaintiff also stated she told Mr. Shreeves of Mr. Grimsley's "you make me feel like I was sixteen again" comment. Plaintiff further stated that Mr. Shreeves "wouldn't say much" because Mr. Grimsley was his boss too. *Id.* Further, Mr. Shreeves suggested to plaintiff that she tell John Lacy about the alleged conduct. The record is also clear that Mr. Shreeves did not do anything to investigate plaintiff's complaint or take corrective measures pursuant to defendant's sexual harassment policy.

Plaintiff also states that she was harassed by a co-worker, Mike Mirth, on July 31, 2000, after she complained to Mr. Lacy of the alleged harassment by Mr. Grimsley. Plaintiff states that Mr. Mirth bumped up against her rear end when Mr. Mirth was next to plaintiff behind the customer counter. Another employee, Jose Lugo, stated he heard plaintiff tell Mr. Mirth to "get off her" when he bent under the counter to get some paper towels. Mr. Shreeves also stated plaintiff told him that on the same day, Mr. Mirth brushed against her behind the counter. There is no evidence in the record indicating plaintiff reported to Mr. Lacy these alleged incidents involving Mr. Mirth, or that Mr. Lacy learned of these incidents through his investigation of Mr. Grimsley.

### • Defendant Responds to Plaintiff's Claims

Mr. Lacy was the only upper management employee to whom plaintiff complained. Martin Roustio, defendant's Director of Co-worker Relations, assisted Mr. Lacy in his investigation of plaintiff's complaints. After he received plaintiff's letter, Mr. Lacy spoke to Mr. Grimsley regarding the allegations. Mr. Lacy reminded Mr. Grimsley of defendant's policy against sexual harassment, and instructed him not to open doors for plaintiff, make any comments about her physical appearance, touch her, or act in any manner that could be construed as harassing her.

In further response to plaintiff's complaints, Mr. Lacy asked plaintiff whether she would like to transfer. Plaintiff accepted the offer and transferred on August 12, 2000 to a different store operated by defendant. Plaintiff states Mr. Lacy asked her about transferring only after she had complained to him that Mr. Grimsley had told her she needed to take a leave of absence because he was "tired of her

stuff," and that, as a result, plaintiff feared losing her job. After her transfer, plaintiff no longer had to work with Mr. Grimsley. Plaintiff stated she believed she could do her job effectively both before and after her transfer. Further, plaintiff stated the transfer was the product of a mutual decision between herself and Mr. Lacy.

On September 20, 2000 plaintiff filed a charge of discrimination with the Kansas Human Rights Commission and the Equal Employment Opportunity Commission (EEOC) regarding her alleged sexual harassment. On September 25, 2000, the EEOC sent a notice of plaintiff's charge of discrimination to defendant.

## B. Defendant's Sexual Harassment Policy

Plaintiff made her complaint to Mr. Lacy pursuant to defendant's policy against sexual harassment in the workplace, which was printed in the company's employee handbook and distributed to all employees, including plaintiff. On her first day of employment, plaintiff signed a statement acknowledging she had received a copy of the employee handbook. Mr. Grimsley also received a copy. Defendant also maintained a written Open Door Policy which encouraged employees with questions or concerns about harassment or discrimination in the workplace to bring the issue to the attention of the employee's supervisor, department head, or to Mr. Roustio. Defendant also posted the Open Door Policy in the stores in which plaintiff worked, as well as state and federal postings concerning sexual harassment and discrimination in the workplace. The policy further instructed employees to complain to "the appropriate supervisor" or to

the Regional Director if the complaint involved the supervisor. (Def.'s Ex. 13). Defendant provided a toll free number for employees to report any complaints or concerns, including reports of discrimination or harassment.

## C. Alleged Retaliation[3]

On October 25, 2000, after plaintiff's transfer, plaintiff was assigned to make deliveries and visit customers with John Niebur, a co-worker and newly hired employee. Plaintiff was instructed to train Mr. Niebur regarding visiting customers at their homes. During the time that plaintiff was assigned to train Mr. Niebur as they visited customers, plaintiff drove one of defendant's vehicles to the home of her boyfriend, where plaintiff remained for at least twenty to thirty minutes while Mr. Niebur waited for her in the vehicle. Upon returning to defendant's store, Mr. Niebur informed his supervisor that he and plaintiff had visited plaintiff's boyfriend, and had not visited customers. Initially, plaintiff denied having visited her boyfriend, but later provided a written statement admitting she had visited her boyfriend for approximately five minutes. Then, after Mr. Niebur provided a statement claiming that plaintiff had remained at the home of plaintiff's boyfriend for more than one hour, plaintiff acknowledged that her first statement had been false. Plaintiff then issued a second written statement admitting she had visited her boyfriend for approximately twenty to thirty minutes.

Defendant states it terminated plaintiff's employment on October 28, 2000 due to plaintiff's dishonesty. Plaintiff, however,

---

**3.** As discussed more fully in the court's analysis section, the court construes plaintiff's Response to Defendant's Motion for Summary Judgment as waiving two out of the three bases for plaintiff's retaliation claim that were preserved in the pretrial order. Accordingly, the court discusses only the facts pertaining to plaintiff's remaining basis for her retaliation claim.

contends that the proximity in timing between plaintiff's filing of a charge with the Equal Employment Opportunity Commission, which the EEOC mailed to defendant on September 25, 2000, and plaintiff's termination establishes pretext. She also contends that the termination of her employment was pretextual because Mr. Niebur and Mr. Mirth were not similarly disciplined for their alleged infractions. In addition, plaintiff claims that other alleged factual inconsistencies indicate defendant's termination of her employment was pretextual.

## • Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Retaliation

■ In the pretrial order, plaintiff preserved three bases for her retaliation claim. Specifically, plaintiff contended she endured retaliation consisting of: (1) a disciplinary write-up she received for attendance problems; (2) a requirement that she provide a physician's statement certifying her ability to meet defendant's lifting requirements before she could return to work following an alleged work-related injury; and (3) the termination of her employment by defendant. Defendant addressed all three bases for plaintiff's re-

taliation claim in its motion for summary judgment. However, in plaintiff's response to defendant's motion for summary judgment, plaintiff failed to respond to defendant's arguments regarding the first two claims of retaliation.

Although plaintiff controverts some facts relating to these two claims, she offers no legal argument or authority in support of them. The court considers plaintiff to have abandoned her claims that she was retaliated against when she received a disciplinary write-up and when defendant required her to provide documentation that she met defendant's lifting requirement. *Accord Ratts v. Bd. of County Comm'rs*, 141 F.Supp.2d 1289, 1314 (D.Kan.2001) (finding that plaintiff abandoned 42 U.S.C. § 1983 claim by failing to respond adequately to defendant's motion for summary judgment); *Edwards & Assocs., Inc. v. Black & Veatch, L.L.P.*, 84 F.Supp.2d 1182, 1197 (D.Kan.2000) (finding fraud claim abandoned under similar circumstances).

The court thus proceeds to analyze plaintiff's claim that she was retaliated against when defendant terminated her employment. Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). "Title VII retaliation claims generally proceed under the *McDonnell Douglas* burden-shifting analysis." *McGarry v. Bd. of County Comm'rs of Pitkin County*, 175 F.3d 1193, 1201 (10th Cir.1999). To establish a prima facie case of retaliation under Title VII, plaintiff must show (1) that she engaged in protected opposition to discrimination; (2) that she suffered an adverse employment action; and (3) a causal connection between the oppo-

sition activity and the adverse employment action. *Id.* Once plaintiff has met the burden to produce evidence of a prima facie case, the burden shifts to defendant to proffer a legitimate, nondiscriminatory reason for the termination of plaintiff's employment. *Id.* Finally, the burden shifts to plaintiff to show that defendant's proffered reasons are pretextual. *Id.* at 1202.

■ Defendant contends that, even if plaintiff can establish a prima facie case, defendant is entitled to summary judgment because defendant terminated plaintiff's employment for a legitimate, nondiscriminatory reason. Specifically, defendant states plaintiff's employment was terminated because plaintiff was dishonest when she denied having visited her boyfriend while she was supposed to be on company business with Mr. Niebur. The record reflects that plaintiff admitted her first written statement she gave defendant, denying that she visited her boyfriend, was false. Further, the second written statement plaintiff gave defendant was controverted by Mr. Niebur to the extent that he claims plaintiff understated the length of her visit.

According to plaintiff, defendant's proffered reason for firing her is pretextual because (1) there is a close temporal proximity between plaintiff's protected conduct and defendant's termination of her employment; (2) Mr. Niebur, who also was present during the incident, was not similarly disciplined; (3) Mr. Mirth, whom plaintiff alleges engaged in sexual harassment of plaintiff, an offense she claims is of comparable seriousness to her alleged dishonesty, was not similarly disciplined; and (4) defendant "had doubts on its own about the alleged reason for plaintiff's termination," as shown by alleged factual inconsistencies including Mr. Lacy's testimony that he did not know who wrote the word

"dishonesty" on plaintiff's notice of termination.

### • Temporal Proximity

Plaintiff claims she can establish that defendant's proffered reason for firing her was pretextual because the date upon which defendant terminated plaintiff's employment, October 28, 2000, was close in time to September 25, 2000, the date upon which the EEOC notified defendant of plaintiff's filing of a charge of discrimination with that agency. In addition, plaintiff claims the court should view plaintiff's termination as being even closer in time, because plaintiff had been absent from work for much of October and returned to work only on October 26, 2000. Defendant, on the other hand, contends the court should use plaintiff's complaint to John Lacy, on July 25, 2000, as the relevant date upon which plaintiff engaged in protected conduct for the purposes of determining temporal proximity.

"A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citing *Burrus v. United Telephone Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.1982)) (finding that adverse action following protected conduct by one day established a causal connection). The Tenth Circuit has "held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation," while "a three-month period, standing alone, is insufficient to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999), cited in *O'Neal*, 237 F.3d at 1253. "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."

*O'Neal*, 237 F.3d at 1252 (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997)).

In determining whether to evaluate temporal proximity from the July 25 date upon which plaintiff brought her complaint to Mr. Lacy, or the date upon which plaintiff filed her charge with the EEOC, the court initially notes that the parties do not cite, nor was the court able to locate upon its own accord, any case dealing with the issue whether temporal proximity for the purpose of determining pretext should be determined from the date of a plaintiff's original complaint, or from the date upon which a plaintiff later brings a charge with the EEOC regarding the same conduct. However, the court finds that the three-month gap of time between plaintiff's initial complaint to Mr. Lacy and plaintiff's termination mitigates against an inference that plaintiff's termination was retaliatory. Defendant was placed on notice of plaintiff's initial complaint, and, in turn, of the possibility plaintiff would later file a complaint with the EEOC or another agency, when plaintiff first reported the incident to Mr. Lacy on July 25, 2000. Further, as defendant pointed out, plaintiff's termination followed three days after the incident about which plaintiff allegedly gave false statements to her employer. Looking at the factual record as a whole, the court does not believe that the approximately one-month time lapse between plaintiff's filing of an EEOC complaint and her termination can support a finding of pretext when the conduct for which defendants claim to have legitimately terminated plaintiff—her alleged dishonesty—occurred much closer in time to plaintiff's termination.

### • Failure to Discipline Mr. Niebur and Mr. Mirth

Next, plaintiff argues that her termination was retaliatory because two other

employees, Mr. Niebur and Mr. Mirth, were not similarly disciplined for their roles in other alleged employment-related disciplinary infractions. Regarding Mr. Niebur, the court finds that the record discredits plaintiff's argument, because Mr. Niebur is not a proper comparator for plaintiff. Although "a plaintiff may also show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness," "[d]ifferences in treatment that are trivial or accidental or explained by a nondiscriminatory motive will not sustain a claim of pretext." *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1232 (10th Cir.2000). Here, defendant has shown that its failure to discipline Mr. Niebur can be explained by a nondiscriminatory motive, because Mr. Niebur did not engage in culpable conduct. Mr. Niebur did not provide a false statement regarding the events in question; to the contrary, he reported the incident to management. Thus, there is no showing that defendant would have had grounds to terminate Mr. Niebur for dishonesty.

Plaintiff also claims her firing was pretextual because Mr. Mirth was not fired for his alleged harassment of plaintiff, and Mr. Mirth was also an employee similarly situated to plaintiff who engaged in alleged conduct of comparable seriousness. However, the court finds plaintiff has not shown that defendant was aware of Mr. Mirth's alleged conduct, or that defendant found that Mr. Mirth had engaged in misconduct. Accordingly, the court finds defendant has shown a nondiscriminatory motive for defendant's failure to discipline Mr. Mirth.

● **Alleged Inconsistencies**

Plaintiff claims that defendant's proffered reason for terminating her employment was pretextual because several pieces of circumstantial evidence should cause the court to doubt defendant's explanation. Specifically, plaintiff claims Mr. Lacy admitted he did not know who wrote the word "dishonesty" on defendant's notice of termination. Further, she states that Mr. Lacy sought to fire plaintiff for an offense that one of plaintiff's other supervisors, Mr. Brown, believed warranted only a "Coaching Form," and that Mr. Lacy admitted he was usually not involved in many terminations. Plaintiff also claims she can show pretext because Mr. Lacy's notes indicate he instructed other employees to scrutinize Ms. Jones's behavior at work and report to him any alleged misconduct.

■■ "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (internal citations omitted). However, "[m]ere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id.* (citing *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988).)

The court believes that no reasonable factfinder would conclude, based upon these alleged inconsistencies proffered by plaintiff, that defendant's reasons for firing plaintiff are unworthy of belief. The court was unable to locate in Mr. Lacy's notes any evidence indicating he told other employees to scrutinize the plaintiff's behavior. Moreover, the court does not find that the inconsistencies raised by plaintiff, even if true, would cause a reasonable factfinder to cast doubt upon the legiti-

mate, nondiscriminatory reasons proffered by defendant.

Plaintiff has not shown that the reason proffered by defendant for plaintiff's termination is unworthy of belief. Accordingly, the court finds plaintiff has not presented evidence sufficient to show that defendant's proffered legitimate, nondiscriminatory reasons for terminating plaintiff's employment are pretextual. Defendant's motion for summary judgment is granted as to plaintiff's retaliation claim.

● **Hostile Work Environment**

▇ To present a prima facie case of hostile work environment based on sexual harassment, plaintiff must put forth sufficient evidence to establish that: (1) she is a member of a protected group; (2) the conduct in question was unwelcome; (3) the harassment was based on sex; and (4) the harassment was sufficiently severe or pervasive to create an abusive working environment. *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 797 (10th Cir. 1997) (citing *Marquart v. Lodge 837, Int'l Ass'n of Machinists,* 26 F.3d 842, 853 (8th Cir.1994)).

**A. *Faragher–Ellerth* Affirmative Defense**

▇ Defendant maintains that even if plaintiff could establish a prima facie case, defendant is entitled to the affirmative defense recognized in *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In *Ellerth,* the Supreme Court determined that an employer is vicariously liable for an "actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." 524 U.S. at 765, 118 S.Ct. 2257. As long as no tangible employment action is taken against the employee, an employer may raise an affirmative defense consisting of two necessary elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* A "tangible employment action" consists of a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761, 118 S.Ct. 2257.

**1. Tangible Employment Action**

▇ Importantly, defendant's termination of plaintiff's employment does not render the *Faragher–Ellerth* affirmative defense unavailable. As the Supreme Court stated in *Ellerth,* the defense is not available "when the **supervisor's harassment culminates in** a tangible employment action, such as discharge, demotion, or undesirable reassignment." 524 U.S. at 765, 118 S.Ct. 2257 (emphasis added). The Court explained that, "[w]hen a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation." *Id.* at 761, 118 S.Ct. 2257. Construing all facts in the light most favorable to the plaintiff, the court finds plaintiff has not placed before the court any evidence indicating that the alleged harassment of plaintiff culminated in plaintiff's termination. Plaintiff does not argue that Mr. Grimsley's harassment resulted in the termination of plaintiff's employment. Rather, plaintiff states she was terminated in retaliation for bringing her sexual harassment complaint to the EEOC.

The uncontroverted facts before the court indicate a distinct temporal break between the alleged harassment of plaintiff

and the circumstances leading up to plaintiff's discharge. Specifically, plaintiff states that after she reported her alleged harassment to Mr. Lacy on July 25, she complained of no further harassment by Mr. Grimsley. Further, defendant transferred plaintiff to a different store, at which she had no contact with Mr. Grimsley. Plaintiff was not discharged until several months after plaintiff reported the alleged harassment. Based on the record before the court, and construing all facts in favor of the plaintiff, the court finds that there has been no showing that the harassment plaintiff allegedly endured culminated in the termination of her employment, as would be necessary for plaintiff to avoid application of the *Faragher–Ellerth* defense.

The court is persuaded by other courts' application of the Faragher–Ellerth defense to similar factual settings. Specifically, in *Johnson v. West,* the Seventh Circuit held that the defense applied even when an employee was terminated from her employment, because the ensuing termination "did not result from [the plaintiff's] harassment in the way *Ellerth* and *Faragher* contemplate." 218 F.3d 725, 731 (7th Cir.2000). Noting that *Faragher* and *Ellerth* established vicarious liability for employers for tangible employment actions taken by a harassing supervisor, the court pointed out that even though the supervisor's actions created a hostile working environment for the plaintiff, the supervisor did not use his supervisory authority in order to get plaintiff fired: "Although his report of her actions resulted in her being fired, he was not her supervisor at the time, he played no role in the decision to fire [plaintiff], and the decision to fire her was made after his report of [plaintiff's] assault was considered in the proper administrative channels." *Id.* at 731. Finding that no abuse of a harassing supervisor's authority had resulted in plaintiff's termination, the Seventh Circuit determined that the Faragher–Ellerth defense was available. *Id.*

Other courts have also held that when no reasonable reading of the record could show that a supervisor's harassment resulted in the termination of plaintiff's employment, no tangible employment action within the meaning of *Faragher* and *Ellerth* has occurred because the alleged harasser has not brought his supervisory authority to bear on the plaintiff. In *Jaudon v. Elder Health, Inc.,* 125 F.Supp.2d 153 (D.Md.2000), the district court found the Faragher–Ellerth defense was available because "significant, intervening circumstances serve[d] to break the causal connection between the alleged harassment ... and the eventual termination of plaintiff;" consequently, plaintiff could not establish that her alleged sexual harassment "culminated" in her termination. 125 F.Supp.2d 153, 161–62 (D.Md.2000). Specifically, the *Jaudon* court noted the following "intervening circumstances" in the record: that plaintiff had invoked company policy and complained of sexual harassment by her supervisor; that the employer investigated the plaintiff's allegations, and formally reprimanded the alleged harasser; and, most importantly, that plaintiff had conceded that the alleged harassment stopped following the harassment. *Id.* As discussed above, a similar set of intervening circumstances is present in the case at bar.

In addition, when the record indicates the alleged harasser did not influence the employer's decision to terminate plaintiff's employment, courts have found that the termination was not a tangible employment action as contemplated by the *Faragher* and *Ellerth* courts. *See, e.g., Walton v. Johnson & Johnson Servs., Inc.,* 203 F.Supp.2d 1312, 1321–22 (M.D.Fla.2002) (finding that, even if employer's termination of plaintiff's active employment sta-

tus due to her disability was a discharge, plaintiff could not invoke Faragher–Ellerth defense because the alleged harasser could not have used his supervisory authority to terminate plaintiff's employment status, because he was no longer with the employer at the time of that employment action); *Desmarteau v. City of Wichita*, 64 F.Supp.2d 1067, 1079 (D.Kan.1999) (finding *Faragher–Ellerth* defense available when plaintiff claimed she was constructively discharged, because *Ellerth's* reference to a *tangible* action serves to exclude actions that could be only constructively attributed to the harasser and, as such, no tangible employment action had occurred).

The court thus finds that, even if plaintiff were in fact terminated because defendant retaliated against her, there is no basis for the court to find that plaintiff's termination was the culmination of her harassment by Mr. Grimsley. The court cannot find that a "tangible employment action" as contemplated by *Faragher* and *Ellerth* could have occurred under the facts in this case, construing them in the light most favorable to the plaintiff. Consequently, the affirmative defense is available to defendant.

**2. Application of the Defense**

▮ Turning to the merits of the defense, the court finds that the record demonstrates a genuine issue of material fact regarding the first prong of the *Faragher–Ellerth* defense; i.e., whether the employer exercised reasonable care to prevent and correct the alleged harassment. Defendant has shown that it exercised reasonable care to prevent sexual harassment by maintaining a complaint procedure, an Open Door Policy, posting the policy at the workplace, and distributing the policy to its employees. In addition, defendant has shown Mr. Lacy began an immediate investigation of plaintiff's allegations and spoke with the alleged harasser, Mr. Grimsley. Plaintiff complained of no further harassment by Mr. Grimsley after she complained to Mr. Lacy.

However, defendant has not demonstrated that it exercised reasonable care in responding to plaintiff's allegations. The record reflects that plaintiff told Mr. Shreeves about at least some of the incidents of alleged harassment prior to the time she contacted Mr. Lacy. Defendant maintains that Mr. Shreeves was not a supervisory employee who would have been "an appropriate supervisor" to whom plaintiff could have complained under defendant's sexual harassment policy, thus placing defendant on notice of plaintiff's allegations. The record is also unclear as to whether plaintiff told Mr. Shreeves about the conduct she allegedly experienced because plaintiff sought to bring a complaint under defendant's harassment policy. However, Mr. Shreeves himself stated that he supervised plaintiff. If he was plaintiff's supervisor, he arguably was a proper party to receive such a complaint.

In addition, plaintiff has shown a genuine issue of material fact exists regarding the second prong of the *Faragher–Ellerth* defense. Under the second prong, an employer is entitled to the affirmative defense if a plaintiff failed to take advantage of the measures the defendant has in place for the reporting and prevention of sexual harassment. Plaintiff has shown the existence of a genuine issue of material fact as to whether this element is satisfied. Specifically, the record is unclear whether plaintiff's conversations with Mr. Shreeves constituted an attempt by plaintiff to bring a report of sexual harassment pursuant to defendant's sexual harassment policy. If her conversations did not constitute a proper report, then plaintiff failed to avail herself of the available mechanism until she contacted Mr. Lacy several months later in July 2000. However, if plaintiff acted pursuant to defendant's sexual

harassment policy in bringing the incidents to Mr. Shreeves's attention, she has satisfied this prong. Given the ambiguous nature of the record, the court cannot find the *Faragher–Ellerth* affirmative defense shields defendant from vicarious liability.

## B. Prima Facie Case

██ The court therefore turns to the question of whether plaintiff may establish a prima facie case, as set forth above. Defendant claims plaintiff cannot satisfy the second and fourth elements of a prima facie case of hostile work environment sexual harassment. Specifically, defendant claims the conduct at issue was neither unwelcome nor sufficiently severe and pervasive as required for a prima facie case.

## 1. Unwelcome Conduct

Defendant claims the conduct of which plaintiff complains was not unwelcome, because plaintiff participated in conversations with fellow employees regarding her personal life. Further, defendant complains plaintiff "actively participated in jokes at her store" and did not appear threatened or uncomfortable. Viewing the evidence in the light most favorable to the plaintiff, however, the court finds that a rational jury could conclude that the alleged harassment was unwelcome.

## 2. Severe and Pervasive

Title VII prohibits an employer from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment on account of her sex. 42 U.S.C. § 2000e–2(a)(1).

██ For a hostile environment claim to survive a summary judgment motion, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment." The plaintiff must produce evidence that she was the object of harassment because of her gender. Conduct that is overtly sexual may be presumed to be because of the victim's gender; however, actionable conduct is not limited to behavior motivated by sexual desire. While the plaintiff must make a showing that the environment was both objectively and subjectively hostile, she need not demonstrate psychological harm, nor is she required to show that her work suffered as a result of the harassment.

██ *Penry v. Fed. Home Loan Bank of Topeka,* 155 F.3d 1257, 1261 (10th Cir.1998) (internal citations omitted). "Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances ... includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The Tenth Circuit recently observed that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is 'quintessentially a question of fact.'" *O'Shea v. Yellow Tech. Services, Inc.,* 185 F.3d 1093, 1098 (10th Cir.1999); *see also Hammad v. Bombardier Learjet, Inc.,* 192 F.Supp.2d 1222, 1238 (D.Kan. 2002) (noting that "[w]hile the Tenth Circuit and courts within this district have granted a motion for summary judgment on hostile work environment claims," *see Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1547 (10th Cir.1995); *Braden v. Cargill, Inc.,* 176 F.Supp.2d 1103, 1113 (D.Kan.2001), these cases appear to be the exception, not the rule, *see, e.g., Smith v.*

*Northwest Fin. Acceptance, Inc.,* 129 F.3d 1408, 1415 (10th Cir.1997); *Wright–Simmons v. City of Okla. City,* 155 F.3d 1264, 1269 (10th Cir.1998)). "Thus, when allegations are made which, if believed by a jury, may constitute a severe and hostile work environment, this court cannot enter summary judgment against a plaintiff." *Hammad,* 192 F.Supp.2d at 1238.

Construing the facts in the light most favorable to the plaintiff, the court believes plaintiff has set forth sufficient evidence to demonstrate incidents that a reasonable jury could find constitute gender-based harassment that was sufficiently severe and pervasive to alter the terms and conditions of plaintiff's employment. Plaintiff has made a showing that the incidents in question were objectively offensive—i.e., that a reasonable person in plaintiff's position would have been offended, particularly given the total number of incidents alleged and the overtly sexual nature of Mr. Grimsley's alleged comments. Further, the court finds plaintiff has set forth sufficient evidence to show that she was subjectively offended by the comments in question, given plaintiff's response to the conduct. Although plaintiff did not report to Mr. Lacy all of the incidents of which she now complains, the court disagrees with defendant that plaintiff's failure to disclose raises an inference that plaintiff was not offended by those incidents. Finally, the court notes that although there is little evidence indicating that the alleged conduct interfered with plaintiff's work performance, this factor alone does not preclude denying summary judgment in the Tenth Circuit, as discussed in *Penry.* Accordingly, the court denies defendant's motion for summary judgment on plaintiff's claim of hostile work environment sexual harassment.

## C. Punitive Damages

■ Defendant contends that plaintiff has alleged an insufficient factual basis to support an award of punitive damages. Plaintiff, however, argues that a genuine issue of material fact exists regarding whether she is entitled to recover punitive damages as part of plaintiff's hostile work environment claim. Specifically, plaintiff claims that defendant acted with malice or reckless indifference to plaintiff's rights because (1) Mr. Shreeves failed to respond to plaintiff's complaints pursuant to defendant's sexual harassment policy; (2) defendant failed to train its employees regarding sexual harassment in the workplace; and (3) defendant has a pattern or practice of gender discrimination as manifested by a separate class action suit filed against defendant.

■ Section 42 U.S.C. § 1981a(b)(1) provides that punitive awards are available for violations of Title VII "if the complaining party demonstrates that the respondent engaged in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual." § 1981a(b)(1). " 'Malice' and 'reckless indifference' in this context refer not to the egregiousness of the employer's conduct, but rather to the employer's knowledge that it may be acting in violation of federal law." *Deters v. Equifax Credit Info. Services, Inc.,* 202 F.3d 1262, 1270 (10th Cir. 2000) (citing *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999)). "[R]ecklessness and malice are to be inferred when a manager responsible for setting or enforcing policy in the area of discrimination does not respond to complaints, despite knowledge of serious harassment." *Id.* (citing *Baty v. Willamette Indus., Inc.,* 172 F.3d 1232, 1244–45 (10th Cir.1999).) However, an employer may not be vicariously liable for punitive damages when "the discriminatory employment decisions of managerial agents" are "contrary to the employer's 'good-faith

efforts to comply with Title VII.'" *Kolstad,* 527 U.S. at 545, 119 S.Ct. 2118. Such a policy preserves Title VII's objectives of "motivating employers to detect and deter violations of Title VII." *Id.* at 546, 119 S.Ct. 2118.

As the court has discussed, the record is unclear whether Mr. Shreeves would have been a proper employee to whom plaintiff could have filed a complaint of discrimination pursuant to defendant's sexual harassment policy. Further, it is unclear whether Mr. Shreeves knew about all of the incidents of which plaintiff complained, or only a few. In examining the evidence in the light most favorable to the plaintiff, the court must conclude that a reasonable jury could find that Mr. Shreeves acted with malice or reckless indifference to plaintiff's rights by failing to respond to her complaints. Further, it is unclear to the court whether the "good faith" defense set forth in *Kolstad* should be available to defendant. The record before the court does not indicate whether and to what extent defendant trained its employees regarding the identification and prevention of sexual harassment. Finally, the court declines to consider plaintiff's argument regarding an alleged pattern and practice of discrimination by defendant as indicated by the filing of a class action lawsuit in a different court, confining its consideration of the issues in this case to the facts pending before this court.

Examining the facts in the light most favorable to the plaintiff, the court denies defendant's motion for summary judgment on the issue of punitive damages.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 49) is granted in part and denied in part. Specifically, defendant's motion is granted to the extent it seeks summary judgment on plaintiff's retaliation claim. Defendant's motion is denied to the extent it seeks summary judgment on plaintiff's hostile work environment claim.